354 So.2d 446 (1978)
WOOD-HOPKINS CONTRACTING COMPANY, Appellant,
v.
ROGER J. AU & SON, INC., Appellee.
JACKSONVILLE ELECTRIC AUTHORITY, Appellant,
v.
ROGER J. AU & SON, INC., Appellee.
Nos. II-146, II-153, II-151 and II-152.
District Court of Appeal of Florida, First District.
January 26, 1978.
Rehearing Denied February 16, 1978.
William Lee Allen, Asst. Gen. Counsel, Jacksonville, for appellant Jacksonville Elec. Authority.
A. Graham Allen, Jacksonville, for appellant Wood-Hopkins Contracting Co.
Charles T. Boyd, Jr., Jacksonville, for appellee Roger J. Au & Son, Inc.
BOOTH, Judge.
These consolidated cases are before the Court on appeal from final judgments entered *447 in the Circuit Court, Duval County. At issue is the bidding for, and award of, the contract for construction of a thermal discharge unit at the Jacksonville Northside Generating Station. The judgments sought to be reviewed enjoin the Jacksonville Electric Authority (JEA) from awarding the contract to Wood-Hopkins Construction Company, Jacksonville, Florida (Wood-Hopkins) and mandate the award of the contract to Roger J. Au & Son, Inc., Mansfield, Ohio (Au).
The questions here are whether the trial court's holding that JEA's actions were arbitrary, capricious and unreasonable is supported by the evidence and whether, based on the evidence presented, the court could require that the contract be awarded to Roger J. Au & Son, as the lowest responsible bidder.
The JEA is a body politic and corporate organized under Chapter 67-1569, Laws of Florida, as amended by Chapter 77-579, Laws of Florida Section 10 of Chapter 77-579 provides in pertinent part as follows:
"All construction ... where the entire costs ... shall exceed $4,000 ... shall be done only under contract or contracts to be entered into by the authority with the lowest responsible bidder ... The authority shall keep a current list of responsible bidders and whenever there shall be an award of contract, the bidder must come from this list." (e.s.)
Prior to this litigation, JEA was notified by the United States Environmental Protection Agency that it must cease discharging waters used to cool its Northside Generating Plant into the San Carlos Creek. To meet these environmental requirements JEA adopted a plan designed and recommended by its consulting engineers, Reynolds, Smith & Hills, which called for the use of 3,000 feet of specially fabricated reinforced fiberglass pipe having diameters of more than sixteen feet. The unique pipe required has never been manufactured before. The JEA approved and pre-qualified two manufacturers to design and supply this pipe: CorBan Industries and Wolf Ridge Plastics.
All general contractors bidding on the project were required to use either CorBan or Wolf Ridge as their designated supplier, and to furnish with their bid the design data of the pipe supplier.
The JEA pre-qualified sixteen contractors to bid on the project, including Appellee Au and Appellant Wood-Hopkins. Nine of those pre-qualified submitted bids on September 14, 1977. The bid of Au was $11,650,000, some $38,000 less than the next lowest bid which was submitted by Wood-Hopkins.
The Au bid also committed the bidder to a completion date 32 days sooner than the next lowest bidder, an important consideration in view of the potential penalty of $25,000 per day for each day the JEA operates the plant after December 31, 1978, without the thermal discharge unit.
Subsequent analysis of the two bids by JEA's staff and consultant engineers showed discrepancies in the pipe design data attached to the two low bids. The design data attached to Au's bid had been supplied by Wolf Ridge Plastics; Wood-Hopkins' design data had been supplied by CorBan.[1] Detailed design calculations were then furnished by both pipe suppliers to the JEA's consulting engineers. The pipe design proposed by Au's supplier, Wolf Ridge, was determined to deviate substantially from specifications. The proposed design attached to the Wood-Hopkins bid also deviated, but this deviation was found by the staff and consultants to be one of judgment or "interpretation."
Au's supplier, Wolf Ridge, stood by its commitment to meet specifications for the same price quoted to the general contractor and proposed to modify its design in accordance with the requirements of JEA's consulting *448 engineers, primarily by adding fiberglass material along one-third of the pipe at no additional cost to the general contractor, Au, or the JEA.
The JEA consultants and staff and the City Purchasing Department recommended, however, that the Au bid be rejected and that the contract be awarded to Wood-Hopkins. The grounds for rejection of the Au bid were: (1) Error in the pipe design data furnished by Wolf Ridge and (2) Failure of Au to be a certificate holder under Florida Statutes, Chapter 468.[2]
Au sought injunctive relief against the threatened action of JEA to award the contract to Wood-Hopkins. A temporary injunction was entered and the cause came on for hearing on the permanent injunction on November 4, 1977. After a day-long hearing of testimony, the trial court entered its order granting a permanent injunction against the award of the contract to Wood-Hopkins.[3] After this action by the court, and on the same day, the JEA held a meeting and voted to reject all bids and to rebid the project.
On November 17, 1977, Au filed its petition for writ of mandamus and the alternative writ issued. On November 29, 1977, a hearing was held and thereafter the trial court entered its final judgment of mandamus requiring that the JEA award the contract to Au.[4]
Appellants' contention that the trial court acted prematurely in entering its order enjoining JEA from awarding the contract to Wood-Hopkins raises the question of the point in time at which arbitrary or unlawful action of a governmental entity is sufficiently imminent or threatened to allow intervention by a court of equity.
There is authority that one seeking injunctive relief in a bidding controversy must act before the public entity votes to accept a bid. At that point, or at the latest on the bidder's notification of the acceptance vote, a contractual relationship arises between the entity and the accepted bidder, even though a formal contract has not been executed. The rejected bidder may then be limited to his remedy at law for damages. Dedmond v. Escambia County, 244 So.2d 758 (1st DCA 1971); Berry v. Okaloosa County, 334 So.2d 349 (1st DCA 1976); 26 Fla Jur, Public Works and Contracts, § 21; See, William A. Berbusse v. North Broward Hospital District, 117 So.2d 550 (2nd DCA 1960). Therefore, the trial court was correct in taking action to preserve the status quo and secure the rights of the parties to equitable relief.
In any event, appellants cannot now be heard to complain that formal action had not been taken on the bids at the time of the first order, since the JEA elected to *449 take formal action on the bids before seeking review of the trial court's injunction order.
The basic principles of the competitive bidding system are stated in Hotel China & Glassware Company v. Board of Public Instruction, 130 So.2d 78, 81 (1st DCA 1961), in part as follows:
"Competitive bidding statutes are enacted for the protection of the public. They create a system by which goods or services required by public authorities may be acquired at the lowest possible cost. The system confers upon both the contractor and the public authority reciprocal benefits, and exacts from each of them reciprocal obligations. The bidder is assured fair consideration of his offer, and is guaranteed the contract if his is the lowest and best bid received. The principal benefit flowing to the public authority is the opportunity of purchasing the goods and services required by it at the best price obtainable. Under this system, the public authority may not arbitrarily or capriciously discriminate between bidders, or make the award on the basis of personal preference." (e.s.)
In the instant case, the trial court found, after hearing all of the evidence, that JEA's staff and consultants acted arbitrarily, unreasonably, and capriciously in recommending the rejection of Au's bid and the award to Wood-Hopkins, and that JEA's reliance on the reasoning of its staff and consultants as a basis for rejecting all bids was likewise arbitrary and unreasonable.
The determination of the trial court in these matters comes to this Court with a presumption of correctness, and will not be lightly set aside. We have reviewed the record and find that it supports the trial court's holding.
The evidence adduced at the hearings established the practice and custom in the industry in bidding on a project such as this and what was contemplated by the bid documents. That evidence is contrary to Appellants' position that the necessity for pipe design modifications disqualified a bid. The testimony was that design changes would be contemplated and that it would be "very unusual" if the initial set of design data were accepted by the owner's consulting engineer. Testimony also established that the design of large reinforced fiberglass pipe is a highly technical and specialized field. General contractors did not have the expertise to check pipe design data for conformity to specification. It was for this reason that JEA pre-qualified two pipe suppliers whose design data and shop drawings were to be submitted with the bid so that JEA's consulting engineers could review the proposed design and require any necessary changes. It was uncontradicted that the supplier in this case is bound, as indeed the supplier itself so states, to furnish pipe meeting the specifications at the cost originally submitted, regardless of additional cost to the supplier of changes required.
In the instant case, no question is raised by Appellants as to the responsibility, integrity and capability of either Au or its designated pipe supplier, Wolf Ridge. Both were pre-qualified by JEA as "responsible." Further, counsel stipulated at the hearing to Au's experience and qualifications.
The trial court ruled that the JEA's pre-qualification of Au, plus the express exemption of Florida Statute § 468.114, made registration requirements inapplicable.
The record clearly supports the holding of the able trial court that Au is the lowest responsible bidder on the project and that the JEA could not reasonably reject Au's bid.
In City of Pensacola v. Kirby, 47 So.2d 533 (Fla. 1950), the Supreme Court enjoined the execution of a contract between the City and one other than the low bidder, holding:
"While the law imposes no mandatory obligation upon a public agency in respect to the letting of competitive contracts that will require the agency in every case to consider the lowest dollars and cents bid as being `the lowest responsible bid' to the exclusion of all other pertinent factors that may be taken into consideration, *450 the law does require that where discretion is vested in a public agency with respect to letting public contracts on a competitive basis, the discretion may not be exercised arbitrarily or capriciously but must be based upon facts reasonably tending to support the conclusions reached by such agency."
Nor do we accept Appellants' contentions that JEA has unbridled discretion to reject any and all bids "with or without" cause. Such action, as with all other discretionary functions of public entities, is subject to the requirement that its exercise be not arbitrary, unreasonable or capricious. Without these limitations the purpose of competitive bidding is circumvented. Rejection of all bidders then becomes a means of allowing a favored bidder another chance to submit a low bid. As stated in McQuillin:[5]
"In exercising the power to reject any or all bids, and proceeding anew with the awarding of the contract, the officers cannot act arbitrarily or capriciously, but must observe good faith and accord to all bidders just consideration, thus avoiding favortism, abuse of discretion, or corruption. Even where the right to reject any and all bids is properly reserved, the bidding law may not be evaded under the color of a rejection."
Accordingly, the judgments of the lower court are AFFIRMED.
IT IS SO ORDERED.
McCORD, C.J. and BOYER, J., concur.
NOTES
[1] Five of the general contractors submitted bids using Wolf Ridge's pipe design; three used CorBan. One contractor submitted a bid giving JEA the option of either pipe supplier. The same data was attached to the bids of all contractors using Wolf Ridge, and the same CorBan data was attached to those bids using that supplier.
[2] The bid documents require registration "in accordance with Chapter 468" of the Florida Statutes. Florida Statute § 468.114, however, expressly exempts "contractors in work on ... utilities and services incidental thereto" from registration.
[3] Final Judgment, November 7, 1977:

.....
"1. That the actions of the Jacksonville Electric Authority Bid Award Committee and its consulting engineers in recommending the rejection of the low bid of Roger J. Au & Son, Inc. was arbitrary, capricious and unreasonable.
2. That Jacksonville Electric Authority, its Board, officers, agents and employees, be permanently restrained and enjoined from approving an award to the Wood-Hopkins Contracting Company as recommended by the Bid Review Committee Report dated October 11, 1977, regarding the Thermal Discharge contract for the Northside Generating Station."
[4] Final Judgment of Mandamus, November 30, 1977:

.....
"That the only evidence or testimony produced to the Court reflected that the Jacksonville Electric Authority Board followed the same reasons of the Bid Award Committee in its recommendation to the Jacksonville Electric Authority Board as a basis for rejecting all bids, which reasons this Court had previously determined to be arbitrary, capricious and unreasonable.
.....
Jacksonville Electric Authority is herewith ordered to immediately award the contract for the Thermal Discharge at Northside Generating Station as set forth in JEA Bid Specification No. F-0685-77 to Roger J. Au & Son, Inc. in accordance with the said Alternative Writ of Mandamus heretofore entered."
[5] McQuillin, Municipal Corporations, § 29.77, at page 438.