361 So.2d 172 (1978)
COUCH CONSTRUCTION COMPANY, INC., Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, State of Florida, Respondent, and
White Construction Company, Inc., Intervenor.
No. II-314.
District Court of Appeal of Florida, First District.
June 16, 1978.
As Amended on Denial of Rehearing June 26, 1978.
*173 Robert R. Feagin, III, F. Alan Cummings and John Radey of Holland & Knight, Tallahassee, for petitioner.
H. Reynolds Sampson, Tallahassee, for respondent.
John S. Rawls and Elaine N. Duggar, Tallahassee, for intervenor.
SMITH, Judge.
Couch Construction Company, Inc., petitions for review of a final order entered by the Department of Transportation in a proceeding determining the substantial interests of Couch and respondent White Construction Company, Inc. Sections 120.57(1), 68, Florida Statutes (1977). The order concerns the award of a contract for paving, in Gadsden County, the last uncompleted link of Interstate Highway 10 between Jacksonville and the Alabama line beyond Pensacola.
The agency's order, entered April 25, 1978, adopted without elaboration the recommended order of a hearing officer of the Division of Administrative Hearings (DOAH) and thereby finally rejected all bids submitted by contractors on December 21, 1977, including the apparent low bid of petitioner Couch. In January 1978, while Couch contested the Department's preliminary decision to reject all December bids, the Department readvertised for and received new bids. On rebidding White was the apparent low bidder and the Department preliminarily determined to contract with White. Today's decision in a companion case, Fla.App., 361 So.2d 184 No. KK-100, disposes of the issues arising as a result of the rebidding process. Both the rebidding process and our decision in the companion case are predicated on the assumption that the Department's order rejecting all bids was not arbitrary and was entered in accordance with Chapter 120.
*174 On November 24, 1977, the Department published its advertisement for bids on the Gadsden paving work, stating in part:
NOTE: A PRE-BID CONFERENCE ON THIS PROJECT WILL BE HELD ON WEDNESDAY, DECEMBER 14, 1977, AT 10:00 A.M. IN ROOM 301 OF THE HAYDON BURNS BUILDING, 605 SUWANEE STREET, TALLAHASSEE, FLORIDA. ALL POTENTIAL BIDDERS WILL BE REQUIRED TO ATTEND.
White attended the pre-bid conference and, on December 21, submitted a sealed bid of slightly more than $1.5 million. Couch neglected to attend the pre-bid conference but submitted a bid of slightly more than $1.4 million. A third contractor submitted the highest bid after also failing to attend the pre-bid conference.
When White and another bidder protested Couch's apparent low bid on the ground that Couch had not attended the required pre-bid conference, the Department officials informally designated the "awards committee"[1] considered alternative recommendations to Secretary Webb, the Department head. Section 20.23(1), Florida Statutes (1977). Their deliberations are described in the findings of fact later made by the DOAH hearing officer, as incorporated in the Department's final order entered April 25, 1978:
Awards Committee members Brown, Bill Ekey, Peter J. White and Willis Armstrong met on December 21 and 22, 1977. In reaching a determination as to their recommendation to the Secretary, the committee members considered three alternatives  awarding the contract to Couch as the apparent low bidder, awarding the contract to White as the next lowest bidder and as the only bidder who attended the pre-bid conference or rejecting all bids received and readvertising for new bids. Each alternative was considered a viable one by the committee members. Although the members felt that the requirement of attendance at a prebid conference was a reasonable requirement due to the uniqueness of the project, no inquiry was made as to what actually transpired at the conference. Nor was any inquiry made as to a reason for petitioner's [Couch's] nonattendance.
It was the unanimous decision of those Committee members present that it would best serve the interests of the State to reject all bids and proceed to readvertise. This decision to recommend rejection and readvertisement was based upon several reasons. The prime consideration was that this project involved the last remaining unopen link in Interstate Highway 10 and time was of the essence. It was felt that if the contract were awarded to Couch or to White, there would be litigation causing delay to the completion of Interstate 10. The Committee members were also concerned with the significant amount of difference between the bids of Couch and White. Rejecting all bids appeared to the Committee members to be the "cleaner" way to go. Mr. Brown testified that the D.O.T. does not generally accept the bid where only one bid is received. Here the apparent low bidder and the highest bidder were considered irregular for failure to attend the prebid conference. Thus, the Department was left with only one bid.
Through Mr. Brown, Secretary Thomas Webb, Jr., was telephonically notified of the recommendation of the Awards Committee. Mr. Webb concurred with the Committee's recommendation because he was concerned with a possible delay to the project due to litigation were the bid to be awarded to either Couch or to White.
*175 The Department's determination to reject all bids was communicated to those affected. Rightly considering that its substantial interests were affected by the determination, Couch regularly filed an administrative complaint[2] with the Department, requesting Section 120.57 proceedings on the issue of whether the Department should take final action rejecting all the December bids. The Secretary, doubtlessly considering that request as initiating the litigation which the Department sought to avoid by the action challenged, denied Couch's request for a hearing. Couch petitioned for review of that denial, and on February 24, 1978, we ordered that the Department provide the hearing which it had improperly denied. Those proceedings led eventually to the Department's final order of April 25, 1978.
We affirm that the Department has wide discretion to reject all bids and to call for new bids for public contracts. Section 337.11(3), Florida Statutes (1977); Willis v. Hathaway, 95 Fla. 608, 117 So. 89 (Fla. 1928); Berry v. Okaloosa County, 334 So.2d 349 (Fla. 1st DCA 1976); Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978). In making such a determination, the Department cannot act arbitrarily. The Administrative Procedure Act requires that the Department's decision be by a final order that takes account of countervailing evidence and argument. When as here there are no rules which define the circumstances in which the Department will reject all bids and readvertise, the Department's order in Section 120.57 proceedings must provide visible proof that the Department is proceeding rationally within the bounds of its discretion and not arbitrarily. In McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), we pointed to the legislative history:
"Three due process checks to prevent arbitrary agency action are the requirements that reasons be stated for all action taken or omitted, that reasons be supported by `the record', and that specific judicial review procedures allow the courts to remedy defects of substance." [346 So.2d at 584.]
And we held:
Failure by the agency to expose and elucidate its reasons for discretionary action will, on judicial review, result in the relief authorized by Section 120.68(13): an order requiring or setting aside agency action, remanding the case for further proceedings or deciding the case, otherwise redressing the effects of official action wrongfully taken or withheld, or providing interlocutory relief. [346 So.2d at 584.]
The recommended order of the DOAH hearing officer, dated April 24, 1978, and the Department's final order adopting it April 25, 1978, are inadequate by Chapter 120 standards. Neither order takes account of significant changes in circumstances since the Department's preliminary decision to reject all bids. In December the Department thought to avoid controversy and delay by rejecting all bids. Appeasement and expediency are rarely fruitful as government policies, and they were not in this case; the Department obviously and erroneously assumed that the bids could be rejected without accountability under Chapter 120. So, acting without affording Couch at least an immediate Section 120.57(2) hearing, and consequently without an order expounding the agency's exercise of discretion in the light of events as then understood by the agency, the Department created an opportunity for subsequent events to reveal the folly of rejecting all bids to avoid controversy and litigation.
A final agency order in proceedings which are concerned principally with agency policy must explain the reasons for exercising agency discretion in the chosen way. The order must take account of countervailing *176 evidence and argument. As we said in McDonald, APA hearing requirements are designed to give effected parties an opportunity to change the agency's mind. That being so, the agency's final order must defend its decision on the basis of what it knows at the time the order is entered.
In this case the Department knew, on April 25, 1978, that in January the Department had discontinued all mandatory pre-bid conferences. The Department knew that its failure to provide Couch at least a prompt Section 120.57(2) hearing in December had resulted in the very litigation and delay which its preliminary decision sought to avoid. These and other factors not known to, or considered by the Department Head, at the time he rejected all bids, came to light afterwards, such as the apparent lack of substance to the December conference and the facts as to how the mandatory attendance requirement came to be included in the advertisement for bids in the first place. In the light of these circumstances the mandatory conference was re-evaluated and discarded on the rebidding of this project. The rejection of all bids, however, on the grounds of failure of the low bidder to attend that conference was not re-evaluated in light of the same circumstances. The final order conspicuously fails to evaluate the Department's December rejection of bids in light of the facts shown at the Section 120.57 hearing. Both the hearing officer and the Department fell into the error of trying to justify the decision on the basis of what was known, thought, and believed by Department officials in December. Such an effort is not in accord with Section 120.57 procedures as we described them in McDonald, 346 So.2d at 584:
"Section 120.57 proceedings are intended to formulate final agency action, not to review action taken earlier and preliminarily."
We stop short of holding that the Department may not now rationally reject all December bids. If the Department still considers that to be the proper action, notwithstanding all it has learned since December, the Department may enter a new final order which explains and defends its decision.
The April 25, 1978 order must be and is REVERSED and the cause REMANDED for entry of an order consistent with Section 337.11 and this opinion.
BOOTH, J., concurs.
BOYER, Acting C.J., dissents.
BOYER, Acting Chief Judge, dissenting.
I disagree. The majority substitute their interpretation of the Administrative Procedure Act for the facts of this case and the applicable law.
By Petition for Review petitioner, Couch Construction Company, Inc., (Couch) seeks a determination that the Department of Transportation of the State of Florida (DOT) abused its discretion or acted in bad faith, arbitrarily, capriciously, or under a misconception of law in rejecting all bids received on a certain highway construction project upon which Couch was one of the bidders, and further that the decision by DOT to reject all bids was made in violation of Florida's Government in the Sunshine Law, Florida Statute 286.011.
The bids on the subject project were opened and read on December 21, 1977. Only three bids were submitted. Couch was the low bidder. Intervenor, White Construction Company, Inc. (White) was the second low bidder. The third and highest bid was submitted by Contee Sand and Gravel Company, Inc. (Contee). Of the three bidders, only White had attended a pre-bid conference required by the "Notice to Contractors" by which bids were invited. On the recommendation of DOT's Awards Committee[1] it, acting through its secretary, decided to reject all bids and to readvertise for new bids to be received on January 12, 1978. Upon being so notified by telegram, Couch, on December 29, 1977, filed a complaint *177 with DOT requesting a hearing pursuant to F.S. 120.57. DOT took the position that there were no material issues of disputed fact and therefore denied Couch a hearing.[2] Couch thereupon filed its petition for review on January 6, 1978.
The readvertised bids on the subject project were accepted on January 12, 1978. Only two were submitted: Couch submitted the identical bid which it had first submitted but White submitted a lower bid by approximately $46,000.00. After hearing the bids read Couch filed in this court a motion for stay, which motion we granted by order dated January 13, 1978. By that order we stayed the awarding of any contract based upon the bids received on January 12.[3] Over the objection of Couch, White was thereafter permitted to intervene. Following a hearing we, on February 24, 1978, relinquished jurisdiction for the conducting of a F.S. 120.57 hearing. The record was, indeed, at that time insufficient as to the "sunshine" issue.
Following an administrative hearing held before a DOAH hearing officer, which hearing was attended by attorneys for Couch, DOT and White, the hearing officer entered a recommended order which order was adopted and entered by DOT on April 25, 1978. Since the material facts are succinctly stated in that order, I quote the relevant portions as follows:

"ISSUES
"The issues presented for determination at the hearing are as follows: [footnote omitted]
"(1) Whether respondent Department of Transportation (D.O.T.) abused its discretion or acted in bad faith, arbitrarily, capriciously, or under a misconception of law in rejecting all bids received on the subject project on December 21, 1977.
"(2) Whether the decision of the respondent D.O.T. to reject all bids was made in violation of Florida's Government in the Sunshine Law, F.S. § 286.011.

"FINDINGS OF FACT
"Upon consideration of the oral and documentary evidence adduced at the hearing, the following relevant facts are found:
"(1) By a `notice to contractors' dated November 24, 1977, the respondent D.O.T. advertised that it would receive bids on December 21, 1977, from qualified contractors for various construction and maintenance programs. The project which is the subject of this proceeding was contained in this notice, identified as `Gadsden County: Federal Aid Project No. I-10-3 (31) 157 Contract II (Job No. 50001-3423) SR 8 (I-10).' This project involved the paving of a certain stretch of Interstate 10 in Gadsden County, which stretch was the last remaining unopen portion of I-10. In addition to a short summary of the contents of the project the notice on this project contained the following language which was underlined and capitalized in the notice:
"NOTE: A PRE-BID CONFERENCE ON THIS PROJECT WILL BE HELD ON WEDNESDAY. DECEMBER 14, 1977. AT 10:00 A.M. IN ROOM 301 OF THE HAYDON BURNS BUILDING, 605 SUWANNEE STREET. TALLAHASSEE, FLORIDA. ALL POTENTIAL BIDDERS WILL BE REQUIRED TO ATTEND. NOTE: ON-THE-JOB TRAINING WILL BE REQUIRED FOR THIS PROJECT.
"2. Mr. Henry Eugene Cowger, deputy state construction engineer for the D.O.T., made the initial decision to require attendance at a prebid conference for this project, although he himself did not draft the language used in the notice. Cowger felt that a prebid conference would be valuable to *178 bidders and the Department due to the uniqueness of this particular project with regard to the requirements concerning maintenance of traffic and work progress. More specifically, the contract called for a close working relationship and cooperation with the first stage contractor on this stretch of road. The first stage contractor is respondent/intervenor White. Also, it was anticipated that the project would be opened in sections with unusual traffic requirements so that the entire project could be utilized in a limited fashion.
"3. Mr. Cowger instructed William F. Ray, the Department's area construction engineer, to arrange for and conduct the prebid conference. No specific instructions were given to Mr. Ray as to which provisions of the contract were to be discussed at the conference. Cowger felt that Ray was knowledgeable with the project and therefore that he needed no instructions.
"4. The prebid conference was held as scheduled on December 14, 1977. Representatives of six different construction companies attended, including a representative from respondent White Construction Company. Through neglect or oversight, petitioner Couch did not attend the conference. A memorandum to the file from Mr. Ray indicates that the following occurred at the conference:
"A statement was made at the beginning of the meeting by W.F. Ray that nothing said by any person at the meeting would change or modify any part of the contract documents.
"Certain portions of the Special Provisions pertaining to maintenance of traffic and limitations of work areas were read and discussed.
"It was agreed by those present that the intent of these Specials Provisions was clear and understandable.
"Mr. McRae of H.D.W. stated that the unknown delay times built into this project would result in much higher than normal bids and his company would probably not enter a bid.
"After a short discussion of the terms of the contract, the meeting was adjourned.
"The conference lasted from thirty to forty-five minutes. At the hearing, Mr. Ray related the questions he could remember which were asked by the contractors. It was admitted that virtually all of the provisions and expectations, unique or otherwise, were fully spelled out in the contract documents. Most of the inquiries at the conference related to the absorption of certain maintenance and traffic costs and responsibilities between the contractor and the D.O.T. In each instance, it was disclosed that the D.O.T. would be responsible for these unless the contract specifically provided otherwise. Questions regarding the sequence of operations and the phasing of the work with the first stage contractor were not specifically answered by D.O.T. representatives.
"5. Of the three contractors who submitted bids on the subject project on December 21, 1977, only respondent/intervenor White had attended the December 14th prebid conference. Joseph E. Villadsen, petitioner's engineering division vice president, had visited the site of the project and had studied the contract provisions, which appeared clear to him. In numerical order, the bids submitted on December 21, 1977, were as follows:

 "$1,410,730.72  petitioner Couch
 "$1,514,272.63  respondent/intervenor White
 "$1,579,168.72  Contee Sand and Gravel Company, Inc.

"6. The respondent has an Awards Committee composed of five executives from the D.O.T. This Committee generally meets once a month to review bids and make a recommendation to respondent's Secretary on the award of contracts for some thirty-five to fifty projects per month. Although Secretary Webb has the authority to make an independent decision and/or to reject the recommendations of the Awards Committee with regard to the acceptance of *179 bids, he could not recall ever having done so.
"7. On the afternoon of December 21, 1977, the same day as the bids were received, Mr. Jay Brown, respondent's director of road operations and chairman of the Awards Committee, learned from two representatives of White that the apparent low bidder, petitioner Couch, had not attended the prebid conference. He thereupon called together those members of the Awards Committee who were in the building at that time to discuss what should be done. Brown also counseled with P.E. Carpenter, the division administrator for the Federal Highway Administration, to determine the extent of the federal participation in funding if a bid other than the low bid were accepted.
"8. Awards Committee members Brown, Bill Ekey, Peter J. White and Willis Armstrong met on December 21 and 22, 1977. In reaching a determination as to their recommendation to the Secretary, the committee members considered three alternatives  awarding the contract to Couch as the apparent low bidder, awarding the contract to White as the next lowest bidder and as the only bidder who attended the prebid conference or rejecting all bids received and readvertising for new bids. Each alternative was considered a viable one by the committee members. Although the members felt that the requirement of attendance at a prebid conference was a reasonable requirement due to the uniqueness of the project, no inquiry was made as to what actually transpired at the conference. Nor was any inquiry made as to a reason for petitioner's nonattendance.
"9. It was the unanimous decision of those Committee members present that it would best serve the interests of the State to reject all bids and proceed to readvertise. This decision to recommend rejection and readvertisement was based upon several reasons. The prime consideration was that this project involved the last remaining unopen link in Interstate Highway 10 and time was of the essence. It was felt that if the contract were awarded to Couch or to White, there would be litigation causing delay to the completion of Interstate 10. The Committee members were also concerned with the significant amount of difference between the bids of Couch and White. Rejecting all bids appeared to the Committee members to be the `cleaner' way to go. Mr. Brown testified that the D.O.T. does not generally accept the bid where only one bid is received. Here the apparent low bidder and the highest bidder were considered irregular for failure to attend the prebid conference. Thus, the Department was left with only one bid.
"10. Through Mr. Brown, Secretary Thomas Webb, Jr., was telephonically notified of the recommendation of the Awards Committee. Mr. Webb concurred with the Committee's recommendation because he was concerned with a possible delay to the project due to litigation were the bid to be awarded to either Couch or to White.
"11. Thereafter, the bidders were notified by telegram that all bids on the project had been rejected due to the failure of the low bidder to attend the prebid conference, and that the project would be readvertised.
"12. On December 29, 1977, Couch filed a `complaint' with the D.O.T. requesting a hearing pursuant to F.S. § 120.57 on the issue of whether the D.O.T. lawfully rejected Couch's bid on the subject project. By Order dated January 9, 1978, Secretary Webb denied Couch's request for a hearing. This denial was appealed by Couch to the District Court of Appeal, First District, and White Construction Company was made a party to that proceeding. After numerous motions were filed and oral argument was had, the District Court, by Order dated February 24, 1978, relinquished jurisdiction for a period of sixty days and remanded the case to the D.O.T. for the purpose of providing Couch a § 120.57(1) hearing. The District Court stayed the D.O.T. from awarding the contract for the subject project.
"13. Prior to the Orders of the District Court, the D.O.T. readvertised the project, calling for a prebid conference on January 11, 1978, and the receipt of bids on January 12, 1978. This time, attendance at the conference *180 was announced to be `expected', rather than `required.' At the hearing, the D.O.T. divulged that attendance at prebid conferences would no longer be required or mandatory in order to avoid the problem inherent in the instant proceeding. Both Couch and White attended the January 11th prebid conference and submitted bids on January 12th. Couch's bid was identical to its December 21, 1977, bid. White submitted a bid approximately $40,000.00 below the bid of Couch.
"14. The D.O.T. receives bids on approximately 420 to 550 construction projects a year. During the past ten years only seven other prebid conferences with required attendance have been held. In those instances, the language contained in the notice was different from the language used in the subject notice. On three occasions the language used was: `ALL PROSPECTIVE BIDDERS MUST ATTEND THIS PRE-BID CONFERENCE AS BIDDING DOCUMENTS WILL NOT BE ISSUED TO CONTRACTORS WHO HAVE NOT BEEN PROPERLY REPRESENTED AT THIS MEETING.' On three occasions the language was: `ATTENDANCE WILL BE MANDATORY FOR THOSE INTENDING TO SUBMIT A BID ON THIS PROJECT.' On one occasion the language was: `ATTENDANCE WILL BE MANDATORY FOR THOSE INTENDING TO SUBMIT A BID ON THIS PROJECT.' The situation where the apparent low bidder has not attended a required prebid conference has never before arisen.

"CONCLUSIONS OF LAW
"The first issue presented for decision is whether, under the facts of this case, the D.O.T. abused its discretion or acted in bad faith, arbitrarily, capriciously or under a misconception of law in rejecting all bids received on December 21, 1977.
"F.S. Section 337.11(3) provides as follows:
`The department may, at its discretion, award the proposed work to the lowest responsible bidder, or it may reject all bids and proceed to readvertise or perform the work with convict labor or free labor.'
"We are not here concerned with that portion of the quoted statute which permits the D.O.T. to award the work to the lowest responsible bidder. The D.O.T. made no determination that petitioner Couch or the other bidders were not responsible bidders. The evidence is clear that the members of the Awards Committee and the Secretary considered that awarding the contract to Couch was a viable alternative. Rather, the relevant inquiry is whether the D.O.T. improperly exercised its discretion in determining to reject all bids and proceed to readvertise. The statute does not mandate that the work be awarded to the lowest responsible bidder. It merely requires that the D.O.T. properly exercise its discretion in either awarding the contract or rejecting all bids or performing the work with convict or free labor. The issue is thus one of whether the Department's decision to reject all bids was a reasonable exercise of its discretion. In order to determine this issue, it is necessary to examine the rationale behind such a decision and to weigh such rationale against the petitioner's claims of arbitrariness or capriciousness.
"Here, the evidence is clear that those persons involved in the decision-making process both at the recommendation level and at the final level, were primarily concerned with a possible delay to the completion of this last link in Interstate Highway 10. This fear of delay from possible litigation was not unjustified. The D.O.T. had received complaints from White's employees that petitioner had not attended the prebid conference. The construction industry bidding process being a very competitive one, and one of the bidders having failed to comply with the notice requirement of attendance, it was reasonable to assume that if the contract were awarded to Couch or to White, impending litigation would ensue, thus delaying construction on the project. While the decision-makers did not inquire as to what transpired at the conference, they were aware of the unique provisions of the contract and each felt that the attendance requirement was a reasonable one. *181 They were also concerned that the second lowest bid was considerably higher than the bid of petitioner. Their decision to reject all bids and readvertise was based upon a determination that such a course of action would be the most fair to all concerned and in the best interests of the State.
"Such rationale cannot be characterized as action taken in bad faith, arbitrarily, capriciously, or under a misconception of law. Nor can it be said that the decision was made in ignorance or through lack of inquiry or through improper influence. Petitioner did not attend the required prebid conference. Whether this failure to attend would have been sufficient to declare petitioner to be irresponsible or disqualified as a bidder need not be determined herein, for that is not what the D.O.T. did. It rejected all bids, and not just the petitioner's bid, as it had the authority to do pursuant to F.S. § 337.11(3). Its rationale for doing so was certainly within the boundaries of reasonableness. In conclusion, petitioner has failed to illustrate an improper exercise of discretion on the part of the D.O.T.
"Petitioner further contends that the D.O.T.'s decision to reject all bids was made in violation of Florida's Government in the Sunshine Law. F.S. § 286.011(1) provides as follows:
`All meetings of any board of commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times and no resolution, rule, regulation, or formal action shall be considered binding except as taken or made at such meeting.'
"The undersigned does not feel that this statute is pertinent to the facts in this case. It is clear from the evidence that though the chief executive officer of the D.O.T., Secretary Webb, relied upon the recommendation of the Awards Committee in reaching his decision, it was he who rendered and had the responsibility for rendering the final decision in this matter. The Awards Committee is composed of executives and staff employees of the D.O.T. who make recommendations within the areas of their expertise. As stated in footnote 10 of the case of Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977),
`The members of a collegial administrative body are not obliged to avoid their staff during evaluation and consideration stages of their deliberations. Were this so, the value of staff expertise would be lost and the intelligent use of employees would be crippled.'
"And, in Bennett v. Warden, 333 So.2d 97 (Fla.App. 2nd 1976), the Court stated
`... frequent and unpublicized meetings between an executive officer and advisors, consultants, staff or personnel under his direction, for the purpose of "fact-finding" to assist him in the execution of those duties, are not meetings within the contemplation of the Sunshine Law. Any other conclusion, carried to its logical extension, would in our view unduly hamper the efficient operation of modern government the administration of which is more and more being placed in the hands of professional administrators. It would be unrealistic, indeed intolerable, to require of such professionals that every meeting, every contact, and every discussion with anyone from whom they would seek counsel or consultation to assist in acquiring the necessary information, data or intelligence needed to advise or guide the authority by whom they are employed, be a public meeting within the disciplines of the Sunshine Law. Neither the letter nor the spirit of the law require it.'
"It is concluded that the deliberations within the Awards Committee and the communication between that Committee and Secretary Webb were not subject to the Sunshine Law.

"CONCLUSION
"Based upon the findings of fact and conclusions of law, set forth herein, the challenged action of the State of Florida, Department of Transportation to reject all bids and readvertise the subject project be *182 and the same is hereby affirmed and upheld."
A review of the record reveals substantial competent evidence to sustain the findings of fact recited in the well reasoned order recommended by the hearing officer and adopted by DOT and the applicable law sustains the conclusions found therein.
It was the prerogative of DOT, not the potential bidders nor this court, to determine, in its reasonable discretion, the conditions and specifications for bidding.[4] Paragraph (2) of the "Findings of Fact" in the subject order recite adequate and reasonable grounds (sustained by the record evidence) for requiring attendance at the prebid conference, and it is abundantly clear that the requirement was set forth in underlined capital letters in the invitation to bid, which the record reveals was received by Couch.[5]
The decision to reject all bids was also for sound reasons, within the broad discretion granted to DOT by F.S. 337.11(3), and was not shown to have been taken in bad faith, arbitrarily, capriciously nor under a misconception of law.[6] In Wood-Hopkins Contract Company v. Roger J. Au & Son, supra, this Court stated the rule governing exercise of the discretion to reject all bids as follows:
"In exercising the power to reject any or all bids, and proceeding anew with the awarding of the contract, the officers cannot act arbitrarily or capriciously, but must observe good faith and accord to all bidders just consideration, thus avoiding favoritism, abuse of discretion, or corruption. Even where the right to reject any and all bids is properly reserved, the bidding law may not be evaded under the color of a rejection." (354 So.2d at page 450)
See also City of Pensacola v. Kirby, 47 So.2d 533, (Fla. 1950); McQuillin, Municipal Corporations, § 29.77.
The facts sub judice, however, are clearly distinguishable from those found in the Wood-Hopkins case wherein the trial court found, after hearing evidence, that in recommending rejection of all bids the advisory staff and consultants acted arbitrarily, unreasonably and capriciously. Under those circumstances we recited that such matters come to an appellate court with a *183 presumption of correctness and will not be lightly set aside. Sub judice, on the other hand, the hearing officer found no such improper action on the part of DOT and its staff. Though the discretion is not unbridled (Wood-Hopkins Contract v. Roger J. Au & Son, supra and authorities therein cited) the Supreme Court of Florida has lent recognition to the discretion afforded by the statute in White Construction Co., Inc. v. Division of Admin., etc., 281 So.2d 194 (Fla. 1973), wherein it concluded:
"However, although the Department of Transportation must open the bid submitted by White Construction Company, Inc., we recognize the application of Florida Statutes, Section 337.11(3), F.S.A., which provides,
`The department may, at its discretion award the proposed work to the lowest responsible bidder, or it may reject all bids and proceed to readvertise or perform the work with convict labor or free labor.'" (281 So.2d at page 197)
Notwithstanding the reason given for rejecting all bids, the laudable attempt to avoid litigation with the attendant delay, which the majority in may view unjustly critcize, DOT actually had little other choice. Clearly, it would have been suspect had it accepted the bid of Couch, who had flaunted a mandatory requirement for bidding; and it would have violated its own announced policy had it accepted the only valid bid received.
In my view the majority emphasize fanciful, but not therein written, procedures under the Administrative Procedures Act rather than the merits of this case. While the APA affords substantive rights and limited procedural guidelines, it is not Holy Writ. When substantial compliance has been accomplished we should address the issues presented rather than "second guess" the hearing officer and the agency as to what could have been articulated in the order. Hindsight is usually 20-20, whereas foresight is little more than conjecture. Taken as a whole, the hearing officer did an excellent job in preparing the recommended order and DOT did well to adopt it. Certainly it is easy for my colleagues to now look back and suggest methods and contents which might now appear to be an improvement. Indeed, a different panel of this same court might well make suggestions for improving this opinion (the majority as well as this dissent) and a superior court might be dissatisfied with both.
The majority make much ado of alleged failure of the hearing officer and DOT to take into account and to defend in the DOT order its decision "on the basis of what it knows at the time the order is entered." reciting several matters as then being known. Yet not one of those alleged then known matters have any bearing whatsoever on the reasons for having rejected all bids.
As already explicated, DOT determined preliminarily the desirability of requiring attendance at a pre-bid conference. Such requirement need not have been necessary nor essential (few things are), but only desirable. In so determining it properly acted within its sound discretion. It also acted within its discretion in rejecting all bids. The APA does not stand as a vehicle for forcing the direction in which an agency must exercise its lawful discretion. Discretion implies the right to elect, depending upon the circumstances, a choice of several viable alternatives. DOT has had ample time and opportunity to recede and it has not elected to do so: That, too, is within its discretion.
Not one requirement of F.S. 120.57 has been omitted by DOT nor by the hearing officer. Even if it be Holy Writ its commandments have been obeyed.
Great emphasis is placed by the majority on this Court's opinion in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). That emphasis is misplaced. It is elementary that every holding, in order to be meaningful, must be viewed in the context of the facts of the particular case. We were there concerned with the award of a bank charter which would have an effect upon other banks in the area and which award (or denial) would affect the public on a continuing *184 basis because of its impact upon commercial interests and the economy of the area. Notwithstanding the exhaustive discussion of administrative law and legal philosophy found in that opinion, the only real issue related to the proper scope of inquiry and judicial review of the exercise of agency discretion[7] when an agency, in an APA proceeding, discards the findings of a DOAH hearing officer and substitutes the agency's own findings in their place and stead.[8] Under those circumstances the facts as they existed up to the very moment of the award (or denial) of the charter were relevant and crucial. The award of a road construction contract has no such implications. The road will (presumably) be built. There is no issue as to the propriety or feasibility of the project. The impact on the community, if any, will be the same regardless of who does the construction. The only relevant and valid consideration (apart from specifications, which are not here involved) is selection of a qualified contractor. The principles announced in the McDonald case are appropriately applied in other cases involving factually similar circumstances. They have no applicability here. Although qualification is an issue in a companion case (case no. KK-100 also decided this date),[9] no such issue has been raised in this case.
We have not overlooked nor ignored the contention urged by Couch that DOT, in deciding to reject all bids, violated F.S. 286.011, the Government in the Sunshine Law. That point too, is well covered in the order here sought to be reviewed, as hereinabove quoted, and no useful purpose will be accomplished by repetition here. All the judges considering this case have discussed it repeatedly. I must assume therefore that the majority, by not mentioning the point, agree with me that it is without merit.
I would affirm the order here reviewed and vacate and set aside the stay order heretofore entered.
NOTES
[1] The Department has neglected to describe the "awards committee" or any other aspect of the bid review process in its rules. Section 120.53(1)(a) requires that the Department and every agency "[a]dopt as a rule a description of its organization, stating the general course and method of its operations... ." The Department has no rules of practice relating particularly to formal and informal procedures in the bidding and contract award process, but it has adopted comprehensive general rules of procedure for "decisions affecting substantial interests." Ch. 14-6, Fla. Admin. Code.
[2] The Department's Rule 14-6.07 provides:

A complaint is the appropriate initial pleading wherein an interested party complains of acts or things done or omitted to be done in violation of some law administered by the department, or in violation of some rule or order issued by the department.
[1] The committee had received protests from both White and Contee that Couch, the apparent low bidder, had not attended the pre-bid conference.
[2] DOT apparently relied upon the holding of our Supreme Court that the procedural requirements established by the administrative procedure act do not require hearings to find facts which can have no bearing on agency action. (ASI, Inc. v. Florida Public Service Commission, 334 So.2d 594 (Fla. 1976))
[3] Obviously anticipating that the matter would soon be resolved, Couch was not required to post any bond as a condition of the ordered stay. The majority yet extend the stay without bond.
[4] See Greenhut Construction Co. v. Henry A. Knott, Inc., 247 So.2d 517 (Fla. 1st DCA 1971) wherein a bid was rejected on the sole ground that the bidder was at the time of submitting the bid a non-registered and noncertified contractor, although in fact an experienced contractor holding a limited or restricted registration which was valid at the time the rejected bid was prepared and submitted, and who thereafter took and passed the necessary examination and acquired the requisite registration and certification prior to commencement of the project; the court stating:

"* * * Admittedly, Knott failed to comply with the foregoing provisions of the instructions when it submitted its bid without being currently registered with the licensing board. Since Knott did not meet the mandatory requirements of the statute regarding registration and certification nor comply with the prequalification requirements set forth in the instructions to bidders, the bid submitted by it was in violation of the act and was not qualified for consideration by General Services in determining the lowest responsible bid received for the work." (247 So.2d at page 521)
[5] That the requirement was changed to a request upon the re-bid invitation is of no materiality. The mere fact that an authority decides, with experience, to relax or modify bidding requirements has no effect upon the validity of the requirement during the period of its employment. Indeed, neither does the fact (when a fact) that a bid awarding entity has the power or authority to waive a bid requirement vest in either the bidders or the courts the right to require it to do so.
[6] Again, the fact that DOT considered alternatives (see paragraphs 8, 9 and 10 of the "Findings of Fact" contained in the quoted order) does not detract from the validity of the one chosen. There are few decisions, indeed, which do not stem from multiple viable alternatives. The receipt of the Couch bid although it had not attended the pre-bid conference; the fact that only one bidder (White) had in fact attended; the desirability for the citizens of the state and the traveling public to have the highway completed and the threat of protracted litigation certainly made the alternative selected (the rejection of all bids) appear to be the best alternative at the time. Hindsight may often reveal that the hoped for results were illusive or not accomplished; but that does not affect the good faith, nor even the wisdom, of the act at the time it was taken.
[7] See F.S. 120.68(12).
[8] See "ISSUES", McDonald v. Department of Banking and Finance, supra, at pages 574-575.
[9] We address in another opinion bearing the same caption as this one, case no. KK-100, 361 So.2d 184, also released this date, other issues relating to the same project as involved sub judice.