# HEALTH QUEST CORPORATION d/b/a REGENTS PARK OF BROWARD v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

## Case No. 84-3297

State of Florida, Division of Administrative Hearings

November 6, 1985

### APPEARANCES OF COUNSEL

**Charles M. Loeser,** Assistant General Counsel, Health Quest Corporation, for petitioner.

**Harden King** and **John M. Carlson,** The Department of Health and Rehabilitative Services, for respondent.

### OPINION

WILLIAM C. SHERRILL, JR., Hearing Officer.

## RECOMMENDED ORDER

The Petitioner, Health Quest Corporation d/b/a Regents Park of Broward, seeks a certificate of need to operate a 120 bed community nursing home in Broward County, Florida. By stipulation, the sole issue in this case is whether there is a need for 120 community nursing home beds in Broward County, Florida, and the long-term financial feasibility of the proposed project as may be determined by the issue of need. T. 25. (Reference to the transcription will be "T." followed by the page number.)

Petitioner presented 21 exhibits which were received into evidence. The Respondent joined in exhibits 15 and 17, but otherwise presented no exhibits.

At the beginning of the hearing on June 3, 1985, the parties stipulated that the record in this case could be supplemented by depositions from representatives from Colonial Palms Nursing Home, Colonial Palms Nursing Home East, and Beverly Manor and exhibits obtained by those depositions. T. 5-9, 14-15.

At the June 14, 1985, continuation of the final hearing, the parties entered into a stipulation which appears to have taken the place of a deposition of Beverly Manor's representative. T. 140-41. Subsequently, by stipulation filed August 9, 1985, the parties agreed that the record would be closed after August 16, 1985, and that any deposition of Colonial Palms would have to be filed before that date to be a part of the record of this case. No deposition was filed, and thus there is no deposition of Colonial Palms in evidence. The record is now closed.

The parties also stipulated that proposed findings of fact and conclusions of law would be filed on or before August 16, 1985. Only the Petitioner has filed proposed findings of fact and conclusions of law. A ruling has been made on each proposed finding of fact in the Appendix to this recommended order.

### FINDINGS OF FACT

1. The Petitioner originally applied for a certificate of need to construct and operate a 180 bed community nursing home in Broward County, Florida. By stipulation, the Petitioner's application was amended to be an application for a certificate of need for 120 nursing home beds at a cost of $4,600,000. Stipulation filed August 9, 1985.

2. The only issue in this case is whether there is a need for 120 nursing home beds in Broward County. T. 25.

3. The parties agree that need is to be determined in this case by application of rule 10-5.11(21), Florida Administrative Code. Prehearing Stipulation, pp. 2-3.

4. In the case at bar, the relevant district is District X, which is Broward County and is not subdivided into subdistricts. T. 147.

5. Rule 10-5.11(21)(b)1-4, which is applicable to this case, requires use of the following data and abbreviations:

A. The number of licensed beds ("LB").

B. The current district population age 65-74 ("POPC").

C. The current district population age 75+ ("POPD").

D. The district population age 65-74 projected three years ahead ("POPA").

E. The district population age 75+ projected three years ahead ("POPB").

F. The average occupancy rate for licensed nursing home beds in the district ("OR").

G. The number of nursing home beds in the district which have received CON approval but are not yet licensed ("approved beds").

6. HRS gathers data from local health councils as to the number of patients in a given nursing home on the first day of each month, and this data, collected in six month segments, is compiled into a semiannual occupancy report. T. 145-46. Joint Exhibit 17 is the semiannual census report and bed need allocation published June 3, 1985, and contains data collected on the first days of the months of October-December 1984 and January-March 1985. T. 147; Joint Exhibit 17.

7. The population figures to be used in this case are from the office of the Governor, and neither party disputes the accuracy of these figures.

8. Relying upon the data in Joint Exhibit 17, HRS concluded that there is only a net need for 11 community nursing home beds in District X on the date of the hearing. Joint Exhibit 17; Joint Exhibit 15; T. 150. This was correctly calculated in Petitioner's proposed finding of fact 20:

A. *Underlying data:*

| | | |
|---|---|---|
| LB | = | 2,875 |
| POPC | = | 157,371 |
| POPD | = | 104,860 |
| POPA | = | 168,793 |
| POPB | = | 124,570 |
| OR | = | 87.59% |
| Approved beds | = | 415 |

B. *Calculations*:

*Bed rates*:

$$BA = \frac{LB}{POPC + (6 \times POPD)}$$

$$= \frac{2{,}875}{157{,}371 + (6 \times 104{,}860)}$$

$$= \frac{2{,}765}{786{,}531}$$

$$= 3.65/1{,}000$$

$$BB = 6 \times BA$$

$$= 6 \times 3.65/1{,}000$$

$$= 21.93/1{,}000$$

(2) *Age—adjusted bed total*:

$$A = (POPA \times BA) + (POPB \times BB)$$

$$= \frac{(168{,}793 \times 3.65)}{1{,}000} + \frac{(124{,}570 \times 21.93)}{1{,}000})$$

$$= (168{,}793 \times 3.65) + (124{,}570 \times 21.93)$$

$$= 617 + 2.732$$

$$= 3{,}349$$

(3) *Occupancy—adjusted total*:

$$SA = \frac{A \times OR}{90}$$

$$= \frac{3{,}349 \times 87.59}{90}$$

$$= 3{,}259$$

(4) *Deduction for licensed & approved beds*:

Net beds $= SA - LB - .9$ (approved beds)

$\quad\quad\quad\quad = 3{,}259 - 2{,}875 - .9 (415)$

$\quad\quad\quad\quad = 384 - 373$

*Net beds* $= 11$

9. Beverly Manor was licensed as a community nursing home for 120 beds on May 13, 1985. T. 140, 41, 151, Petitioner's Exhibit 16.

10. The Department of Health and Rehabilitative Services has a policy to use May 1, 1985, as the cutoff date for counting licensed nursing home beds for the June 1985 semiannual report, and based on that policy, did not consider the licensed beds at Beverly Manor in calculating bed need in Joint Exhibit 17 and 15. T. 159, 151-52.

11. The Department of Health and Rehabilitative Services uses a variety of other cutoff dates in compiling the semiannual report.

192

Poverty data is from 1980. Approved bed count is from May 1, 1985. Population data is from January 1985. T. 148-50.

12. The reason offered by HRS for using May 1, 1985, for a cutoff date for counting licensed nursing home beds was to give HRS employees enough time to put all the data together to issue the semiannual report on the due date, June, 1985. T. 159-60.

13. Daystar, Inc. is reported to be a 44 bed nursing home in District X on Joint Exhibit 17. The Department of Health and Rehabilitative Services includes in the semiannual report all nursing homes that are licensed by the HRS office of licensure and certification. T. 152. HRS included Daystar, Inc., on the semiannual report. Id. Daystar, Inc., operates a 44 bed facility for Christian Scientists that does not offer medical treatment or medication of any kind, but relies solely upon spiritual healing. T. 36-37.

14. On September 29, 1981, certificate of need number 1746 was issued to Colonial Palms Nursing Home *East*. Petitioner's Exhibit 18. The termination date was extended to March 27, 1983. Id. Three days before the termination date, HRS issues an amended certificate of need number 1746, to *Colonial Palms, Inc.* to construct the 120 beds in two phases. Phase I was the addition of 46 beds to an existing facility, which HRS did not name, and phase II was to construct a new 74 bed nursing home facility. Petitioner's Exhibit 19. On April 5, 1983, a Robert T. Held wrote to HRS on "Colonial Palms Nursing Home" letterhead stating that construction regarding certificate of need 1746 had commenced. On June 3, 1985, a William R. Meyer spoke with a Ruth Dixon, Control Clerk, Broward County Permit Bureau, and Ms. Dixon advised Mr. Meyer that no building permit had been issued to Colonial Palms *West* at 51 West Sample Road, Pompano Beach, Florida 33064 or to Bodee Construction Company for 74 beds. Ms. Dixon further advised Mr. Meyer that "Colonial Palms" has not been issues a building permit since 1983, and that she checked both addresses of Colonial Palms under the construction company in her investigation.

15. HRS takes the position that the Colonial Palms Certificate of need for 74 new beds is still valid since it is still on its approved list and has not been taken off as void. T. 156-57.

16. The foregoing evidence is not sufficient to conclude that certificate of need number 1746 is void in whole or in part due to failure to commence construction. The evidence is ambiguous as to which entity holds the certificate of need or which entity was checked for construction permits, and there is no evidence as to whether construction could

have been initiated without a construction permit on file in Broward County. Moreover, the Broward County evidence is hearsay, and although there has been no objection to it, the Hearing Officer independently does not regard it to be sufficient, pursuant to section 120.58(1)(a), Fla. Stat., to be relied upon. Finally, it is entirely unclear what type of construction, undertaken by what entity, would be required for this certificate of need to satisfy the "commence construction" requirement.

17. Colonial Palms was not licensed for an additional 46 beds until January 18, 1985, and thus it had only 81 licensed beds on the first of January, 1985; thus, the occupancy report for Colonial Palms for January, 1985, should have been 83 patients in 81 licensed beds. T. 154; Petitioner's Exhibit 13.

18. The "occupancy rate" contained in the semiannual reports, Joint Exhibit 17 and Petitioner's Exhibit 9, is calculated by dividing the total of the patient census in all nursing homes on the first of each month for the six month reporting period by the total of all licensed nursing home beds for those same facilities during the same months. T. 161. Petitioner's Exhibit 10 is an example of how HRS makes this calculation. Id.

19. As a result of adding the 120 licensed beds at Beverly Manor, the "licensed beds" (LB) figure in the formula increases to 2,995, and "approved beds" changes from 415 to 295.

20. The correction to the January 1985 licensed beds at Colonial Palms (corrected to 81 licensed beds), results in a change to the "occupancy rate" from 87.59% as reported in Joint Exhibit 17, to 88.06%. This calculation is derived from Petitioner's Exhibits 12, 13, and 14. The patient census for October 1984 through March 1985 was 13,051. The licensed beds total for the same months, however, would be 14,820, is 88.06%.

21. In the past, HRS has granted partial approval of a lesser number of beds than sought by the applicant for a certificate of need. T. 142.

22. The computations contained in conclusion of law paragraph 10 are found to be the correct computation of need pursuant to the rule, and are hereby incorporated by reference as a finding of fact.

## CONCLUSIONS OF LAW

1. Jurisdiction in this case exists pursuant to section 120.57(1), Fla. Stat.

2. A section 120.57(1), Fla. Stat., administrative proceeding is

194

intended to formulate final agency action, and thus this recommended order should be premised upon the most recent and reliable facts. *McDonald v. Department of Banking and Finance*, 346 So.2d 569, 584 (Fla. 1st DCA 1977); *Couch Construction Company, Inc. v. Department of Transportation*, 361 So.2d 172, 176 (Fla. 1st DCA 1978).

3. In this case, the determination of need for additional community nursing home beds in District X, Broward County, should be based upon the most recent facts: the semiannual nursing home census report and bed need allocation, Joint Exhibit 17, as corrected by evidence in the record. Both parties have, indeed, relied upon June 1985 data.

4. Using May 1, 1985, as a cutoff data for assembling the data for Joint Exhibit 17 is a reasonable policy for the administrative purposes of assembling that semiannual report, but HRS has failed to justify extension of that policy to preclude a certificate of need applicant from showing that better data—either more current or more accurate—exists to determine actual current need for a new health service. That is precisely the purpose of a section 120.57(1) hearing: to give the applicant a chance to change the mind of the agency. It would make no sense for HRS to close its eyes to better data when presented with such data. HRS is responsible for all of the good health planning purposes of section 381.493, Fla. Stat., which includes the requirement that HRS give "every consideration" to the "provision of health services which are not currently available or which are insufficiently provided within the community," and to help "to develop programs of service that will assure the *best possible service* to the community." Id.

5. Thus, although it is reasonable for HRS to exclude Beverly Manor's 120 licensed beds from Joint Exhibit 17, HRS has not presented good justification in this record for the extension of that policy to preclude consideration of such more accurate data in this section 120.57 proceeding. The 120 licensed beds at Beverly Manor must, as a matter of law, be included in determining need under the rule.

6. A similar issue exists with respect to the number of licensed beds at Colonial Palms in January 1985. Rule 10-5.11(21)(b)4 focuses upon month to month data of licensed community nursing home beds. Ms. Linda Husbands, who is a planner with the data analysis unit for the office of comprehensive planning of the Respondent, agreed that the number of licensed beds at Colonial Palms was actually 81 for January 1985, and agreed that this fact *should* affect the occupancy rate. T. 154. Thus, a proper calculation using the rule must take this correction into account.

7. Petitioner argues that the 44 beds licensed to Daystar, Inc. should not be included in the calculation of nursing home bed need because Daystar, Inc. is not a "health care facility" as so defined by section 381.493(3)(g), Fla. Stat. Since Daystar, Inc. relies solely upon spiritual means for healing, it is not a "health care facility" as so defined by the statutes regulating certificates of need. However, by rule, the Department of Health and Rehabilitate Services has developed a formula for determining the need for "community nursing home beds." That rule, rule 105.11(21), Florida Administrative Code, defines a community nursing home bed as a "nursing home bed not located in a life care facility certified under Chapter 651, Florida Statutes." The rule further uses the number of "*licensed* community nursing home beds in the relevant district" in the formula. Rule 10-5.11(21)(b)2, Florida Administrative Code. Thus, the need formula does not count "health care facilities" but rather, focuses upon "licensed" nursing home beds which are not life care facilities beds.

8. The record in this case is devoid of direct evidence as to the licensure of Daystar, Inc., or whether Daystar, Inc. is a "nursing home" for purposes of licensure pursuant to Part I, Chapter 400, Fla. Stat. The Petitioner never asked it witness if Daystar was a "nursing home," and the Respondent never asked its witness if Daystar was in fact licensed by the HRS office of licensure and certification. HRS did establish that Daystar is included on the semiannual report and that HRS includes on the semiannual report those facilities which are licensed by its office of licensure and certification. Granting a presumption of regularity to the agency, and since the Petitioner failed to show that Daystar, Inc. was either not licensed or not a licensed nursing home, it must be concluded that the 44 beds at Daystar were properly counted as "licensed community nursing home beds" under the formula contained in rule 10-5.11(21), Florida Administrative Code.

9. The evidence is not sufficient to conclude that Colonial Palms failed to commence construction as required to retain its certificate of need number 1746. The only evidence on the point is not sufficient as explained in finding of fact 16. Thus, is would not be appropriate to adjust the calculation of need based upon the proposition that any portion of certificate of need number 1746 is void.

10. Using the corrections for Beverly Manor (which adds 120 to the licensed beds in the district) and the licensed beds in January 1985 at Colonial Palms (corrected to 81, which changes the occupancy rate to 88.06%), the following is the correct computation of bed need pursuant to the rule:

A. *Underlying data*

LB   =     2,995
POPC =     157,371
POPD =     104,860
POPA =     168,793
POPB =     124,570
OR   =     88.06%
Approved beds   =   295

B. *Calculations*

(1) *Bed rates*

$$BA = \frac{LB}{POPC + (6 \times POPD)}$$

$$= \frac{2,995}{157,371 + (6 \times 104,860)}$$

$$= \frac{2,995}{786,351}$$

$$= 0.00380786$$

$$BB = 6 \times BA$$

$$= 6 \times 0.00380786$$

$$0.02284716$$

(2) *Age—adjusted bed total*:

$$A = (POPA \times BA) + (POPB \times BB)$$

$$= (168,793 \times 0.00380786) \times$$
$$(124,570 \times 0.02284716)$$

$$= 3488.810911$$

$$= 3489 \text{ (Rounded)}$$

(3) *Occupancy—adjusted total*:

$$SA = \frac{A \times OR}{90}$$

$$= \frac{3489 \times 88.06}{90}$$

$$= 3413$$

(4) *Deduction for licensed and approved beds*:

Net beds   =   SA − LB − .9 (approved beds)
    =   3413 − 2,995 − .9 (295)
    =   152.5
*Net Beds*   =   *153* (Rounded)

11. Consequently, there is a net bed needs in District X of 153 community nursing home beds as of the date of the final hearing. Since need is the only issue in this case, the Department of Health and

Rehabilitative Services should grant a certificate of need to the Petitioner for 120 community nursing home beds as requested in the amended application, subject to paragraph 12 which follows.

12. Since the final hearing in this case, the First District Court of Appeal has issued its opinion in *Gulf Court Nursing Center v. Department of Health and Rehabilitative Services*, 10 F.L.W. 1983 (Case number AY-469, August 20, 1985). The parties in this case have agreed to allow the Petitioner to amend its application and the Petitioner has clearly sought those beds indicated as available (i.e., net beds) as shown by the most recent semiannual report, Joint Exhibit 17. There is no evidence in this case as to which batching cycle the Petitioner originally filed in, but it would appear that Petitioner may now be an applicant in the current batching cycle, July 1985. Rule 10-5.11(21)(b)7 provides that review of applications submitted for the July batching cycle shall be based upon the number of licenses (sic) beds (LB and LBD) as of June 1 preceding that cycle, and that is exactly what has been presented in this case in Joint Exhibit 17 and the testimony of 11 witnesses. The Hearing Officer is aware that the *Gulf Court* case may be reheard, but notwithstanding that rehearing potential, the Department of Health and Rehabilitative Services would be well advised to consider the rights of applicants in the current (July) batching cycle for community nursing home beds in District X, as well, perhaps as the rights of intervening batched applicants, since these—if they exist—may be seeking to satisfy the same net bed need in the same pool of beds, and thus *may* be entitled to a comparative hearing with this Petitioner. It is the responsibility, initially, of the Department of Health and Rehabilitative Services to make these determination.

## RECOMMENDATION

It is therefore recommended, subject to paragraph 12 above, that the Department of Health and Rehabilitative Services issue to the Petitioner, Health Question Corporation d/b/a Regents Park of Broward, a certificate of need to construct and operate 120 community nursing home beds in District X.

DONE and ORDERED this 6th day of November, 1985, in Tallahassee, Florida.

## FINAL ORDER

This cause came on before me for the purpose of issuing a final agency order. The Hearing Officer assigned by the Division of Administrative Hearings (DOAH) in the above-styled case submitted a Recommended Order to the Department of Health and Rehabilitative

Services (HRS). A copy of that Recommended Order is attached hereto. Exceptions were filed by Health Quest Corporation d/b/a Regents Park of Broward.

## RULING ON EXCEPTIONS

Petitioner takes exception to the Hearing Officer's conclusion that applicants in the July batching cycle may be entitled to a comparative hearing. Petitioner has correctly pointed out that unless a petition to intervene is properly before the Hearing Officer, no ruling can be made on the correctness of intervention. Petitioner's exception directed to this conclusion is granted.

## FINDINGS OF FACT

The Department hereby adopts and incorporates by references the findings of fact set forth in the Recommended Order.

## CONCLUSIONS OF LAW

The Conclusions of Law set forth in the Recommended Order are hereby adopted and incorporated by reference as though fully set forth herein except paragraph 12 which is specifically not adopted for the reasons set forth in the Ruling on Exceptions.

Based on the foregoing, it is

ADJUDGED, that the application of *Health Quest Corporation d/ b/a Regents Park Broward* for a Certificate of Need to operate a 120 bed community nursing home in Broward County, Florida, is GRANTED.

DONE and ORDERED this 10th day of April, 1986, in Tallahassee, Florida.