581 So.2d 1375 (1991)
Monroe C. SCHIFFMAN, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF PHARMACY, Appellee.
No. 90-1838.
District Court of Appeal of Florida, First District.
June 13, 1991.
Andrew S. Berman, of Young, Stern & Tannenbaum, P.A., North Miami Beach, for appellant.
*1376 Robert A. Butterworth, Atty. Gen., and John J. Rimes, III, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellant, Monroe C. Schiffman, appeals a final order denying his application for reinstatement of his license to practice pharmacy. We reverse and remand for further proceedings.
Schiffman was first licensed to practice pharmacy in New York in 1956 and in Florida in 1959. In 1976, while working as a licensed pharmacist in two pharmacies he owned in Miami, Schiffman sold substantial amounts of controlled substances (e.g., Dilaudid, Nembutal, Seconal, Quaalude) in violation of federal law. As a consequence appellee, the Board of Pharmacy of the Department of Professional Regulation (the Board), in 1977 revoked Schiffman's Florida license for failure to properly maintain records for dispensing Schedule II and Schedule III controlled substances. On May 10, 1977, Schiffman was convicted in United States District Court for the Southern District of Florida for conspiracy to possess with intent to distribute various Schedule II controlled substances, distribution of various Schedule II substances, and furnishing false and incomplete information on required records. He was sentenced to prison and completed his sentence in June of 1986.
Based upon his conviction, Schiffman's license to practice pharmacy in New York was revoked in 1981. In 1984 he applied in New York for restoration of that license, and on April 24, 1986, the New York Commissioner of Education modified the prior order of revocation to permit Schiffman to practice pharmacy in New York, subject to certain terms and conditions. Schiffman has since met the requirements of the order and is free to practice pharmacy in New York without restriction.
Schiffman applied for reinstatement of his Florida license in 1981, 1987, and 1989 and was denied each time. With regard to the latter denial, the subject of this appeal, the hearing officer found that when it revoked Schiffman's license in 1977, the Board intended to permanently bar him from holding a pharmacy license, as shown by the fact that the Board did not impose any conditions for reinstatement in the order of revocation. The hearing officer also found that Schiffman's evidence of rehabilitation was insufficient. The hearing officer stated that a regulatory board, acting within its statutory authority to determine whether an individual should be permitted to continue practicing in his or her profession, is given great deference and will not be overturned unless it has acted in an arbitrary and capricious manner, which Schiffman failed to establish. In the final order, the Board summarily accepted and adopted the hearing officer's recommendation without discussion and denied Schiffman's application for reinstatement.
We consider this case to be controlled by three prior decisions of this court: Katz v. Florida State Board of Medical Examiners, 405 So.2d 465 (Fla. 1st DCA 1981); Griffith v. Board of Medical Examiners, 454 So.2d 683 (Fla. 1st DCA 1984); and Jordan v. Department of Professional Regulation, 522 So.2d 450 (Fla. 1st DCA 1988). From these cases we conclude that the Board's final order is inadequate because it contains no statement of policy to support its refusal to reinstate Schiffman's license. Moreover, we hold that the Board does not have the power under the current regulatory statutes to permanently revoke Schiffman's license.
Section 465.016(4), Florida Statutes (1989),[1] authorizes the Board of Pharmacy to establish rules containing guidelines for reinstatement of licenses to practice pharmacy. This statute is directory rather than mandatory, cf. Katz v. Florida State Board of Medical Examiners, 405 So.2d 465, 466 (Fla. 1st DCA 1981), and the Board has chosen not to articulate such *1377 guidelines by rule. Nevertheless, an agency exercising discretionary nonrule policy must explain such policy in its final order. Id. (citing McDonald v. Department of Banking and Finance, 346 So.2d 569, 583 (Fla. 1st DCA 1977). In Katz, this court reversed an order in which the Board of Medical Examiners denied a physician's reinstatement, stating both that the order was "totally deficient" because it did not include a statement of policy supporting the denial of the reissuance of Katz's license, and that "[a]n agency which has opted not to establish guidelines for a particular proceeding is required to make specific findings of fact and state the policy reasons supporting the agency action." Katz, 405 So.2d at 466.
Similarly in Griffith v. Board of Medical Examiners, 454 So.2d 683 (Fla. 1st DCA 1984), this court reversed an order denying reinstatement of a medical license pursuant to the analysis advanced in Katz. Griffith, a physician whose license to practice medicine had been revoked, sought reinstatement of his license from the Board of Medical Examiners, although his revocation order, like the revocation order in the case at bar, did not state that he could petition for reinstatement. The Board denied reinstatement several times, indicating that it considered Griffith's request to be "premature." Griffith thereafter filed a petition for declaratory statement asking the Board to articulate the criteria it would use to evaluate a petition for reinstatement and the criteria it would use to determine when such petition could be regarded as "mature." The Board replied that criteria for reinstatement are found in Section 458.331(3), Florida Statutes (1983),[2] which provided:
"The board shall not reinstate the license of a physician, or cause a license to be issued to a person it has deemed unqualified, until such time as it is satisfied that he has complied with all the terms and conditions set forth in the final order and that such person is capable of safely engaging in the practice of medicine."
Id. at 685. The Board also ruled that in addition to meeting the requirements of this provision, Griffith must demonstrate that his poor medical judgment, which justified the initial revocation, had improved to the point that the Board could safely conclude that he would not again violate the law or disciplinary rules. This court observed that although these criteria for reinstatement were sufficient, the agency had nevertheless failed to set forth a statement of policy that would enable Griffith to determine when a petition would be ripe for consideration. The court continued that if the agency decided to deny an application for reinstatement on the ground that it was premature, "the agency will have to articulate policy guidelines such that one may reasonably know when he might expect to have the Board consider his petition on the merits. Neither of the appealed orders is sufficient in this respect." Id. at 686.
The order in the case at bar is similarly deficient in that it contains no policy reasons justifying the denial of reinstatement to Schiffman, and it thus fails to place Schiffman on notice of what he must show before he will be eligible for reinstatement. In addition, there are inconsistent findings of fact in the recommended order, approved by the Board, which compound the problem. In finding of fact number eight, the hearing officer found, based upon affidavits of Board members who had initially revoked Schiffman's license, that the Board intended Schiffman's revocation to be permanent. However, in finding of fact number nine and conclusion of law number five, the hearing officer indicated that Schiffman simply did not provide sufficient proof of rehabilitation. These findings constitute the sole basis articulated in the recommended order for denying Schiffman's reinstatement. Finding of fact number nine *1378 and conclusion of law number five imply that Schiffman could show rehabilitation but did not provide sufficient evidence; whereas finding of fact number eight indicates that his license had been permanently revoked. It is therefore impossible to determine, in the absence of agency guidelines, whether the Board, in approving the recommended findings, considers that Schiffman can never be considered for reinstatement, or, if he may, what kind of evidence of rehabilitation the Board would consider appropriate as to this issue. Under Katz and Griffith, the final order must therefore be reversed.
In doing so, we also reject the Board's position that Schiffman's license can never be reinstated. We conclude that the pharmacy laws do not authorize the penalty of permanent revocation. Our conclusion in this regard is supported by similarly worded statutes regulating the nursing profession and case law construing such statutes. In Jordan v. Department of Professional Regulation, 522 So.2d 450 (Fla. 1st DCA 1988), nurse Samuel Jordan's license was revoked with no opportunity for reinstatement pursuant to an agency rule which specifically stated, "`No license revoked by the Board of Nursing after July 26, 1985, shall be subject to reinstatement.'" Id. at 452 (quoting Fla. Admin. Code Rule 210-10.005(3)). In reversing, this court concluded that neither the rule nor permanent revocation was authorized by the applicable statutes.
In so holding, the court considered the provisions of Section 464.018(2), Florida Statutes (1985), authorizing the Board of Nursing to revoke a license for any of the enumerated violations of the statute, and subsection (3) thereof prohibiting the Board from reinstating a license until such time as "`it is satisfied that such person has complied with all the terms and conditions set forth in the final order and that such person is capable of safely engaging in the practice of nursing.'" Id. at 452. These provisions are identical to the parallel provisions of section 465.016 relating to the reinstatement of a pharmaceutical license. The only difference is that the nursing statute contained a provision (subsection (4)) that did permit permanent debarment of a nurse who had been found guilty three times by the Board of violations involving drug use. This subsection, however, did not apply to nurse Jordan. In reaching its decision in Jordan, this court concluded that subsections (3) and (4) disclosed the legislative recognition "that nurses would be given an opportunity for reinstatement of their licenses." Jordan, 522 So.2d at 452 (emphasis added).
Next, the court analyzed the statement of legislative intent in Section 464.002, Florida Statutes (1985), which is nearly identical to the statement of legislative intent in the Florida Pharmacy Act, Section 465.002, Florida Statutes (1989).[3] Based upon these statutes, this court reached the following conclusion:
In essence, the legislation under consideration is designed to protect the public from nurses who are unqualified to practice their profession for various reasons. This goal is accomplished in part by inflicting disciplinary sanctions on a nurse who violates one or more of the grounds set out in section 464.018. Therefore, when the Board of Nursing revokes the license of an unqualified nurse, it is fulfilling the legislative purpose of protecting the public. However, when the Board denies that same nurse an opportunity for reinstatement of his or her license, it deviates from the legislative goal. It is unskilled, incompetent, and unprofessional nurses, not rehabilitated nurses, who are a threat to the public's safety. We therefore hold that *1379 [the rule permitting permanent revocation] is not authorized by section 464.018 and is thus an invalid exercise of delegated authority.
Jordan, 522 So.2d at 453 (emphasis added).[4]
Consistent with this court's decision in Jordan, we conclude that the nearly identical pharmacy laws do not authorize the Board to permanently revoke a pharmacist's license.[5] An administrative agency has only the authority that the legislature has conferred it by statute. City of Cape Coral v. GAC Utils., Inc., of Fla., 281 So.2d 493, 495-97 (Fla. 1973) (the powers, duties, and authority of the Public Service Commission are only those expressly or impliedly conferred by statute, and any doubt as to the lawful existence of a particular power exercised by the Commission must be resolved against the exercise thereof); Florida Bridge Co. v. Bevis, 363 So.2d 799, 802 (Fla. 1978) (same). Therefore, the Board may not conclude on remand that Schiffman is permanently barred from reinstatement.[6]
We REVERSE the final order and REMAND in order to permit the Board to articulate clear statements of fact and policy consistent with this opinion, with the additional direction that the Board is prohibited from permanently revoking Schiffman's license under existing statutes.
WIGGINTON, J., and WENTWORTH, Senior Judge, concur.
NOTES
[1] Section 465.016(4) provides:

The board shall by rule establish guidelines for the disposition of disciplinary cases involving specific types of violations. Such guidelines may include minimum and maximum fines, periods of supervision or probation, or conditions of probation or reissuance of a license.
[2] This provision is virtually identical to Section 465.016(3), Florida Statutes, (1989), relating to reinstatement of pharmacists' licenses, which provides:

The board shall not reinstate the license of a pharmacist, or cause a license to be issued to a person it has deemed unqualified, until such time as it is satisfied that he has complied with all the terms and conditions set forth in the final order and that such person is capable of safely engaging in the practice of pharmacy.
[3] Section 465.002 provides, in part:

The sole legislative purpose for enacting this chapter is to ensure that every pharmacist practicing in this state and every pharmacy meet minimum requirements for safe practice. It is the legislative intent that pharmacists who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.
Section 464.002 contained two legislative findings regarding the need for regulation of nurses, and then included a statement of purpose that is identical to the provisions above, but for references to nursing rather than pharmacy.
[4] The nursing statute was amended in 1989 to specifically permit "permanent revocation of a license." § 464.018(2)(c), Fla. Stat. (1989).
[5] The Board contends that the existence of section 464.018(4), prohibiting reinstatement of nurses for certain drug offenses, distinguishes Jordan from the case at bar, because the existence of the option to permanently debar in subsection (4) demonstrated that subsection (3) must permit reinstatement. We are not persuaded by this reasoning. The fact remains that section 464.018(3) in the nursing statute and section 465.016(3) in the pharmacy statute are identical, and neither authorizes permanent revocation of a license.
[6] In its answer brief, the Board states that it found a case in which The Florida Bar determined that it had the power to permanently disbar an attorney, The Florida Bar v. Winter, 505 So.2d 1337 (Fla. 1987), and the Board analogizes that it has comparable authority. On the contrary, Winter does not involve permanent revocation, but instead involves an attorney who was merely given a public reprimand. The case is therefore inapplicable to the issue at bar.