Larry Fuchs Executive Director Department of Revenue
QUESTION
1. Must the Department of Revenue adjust distributions of trust funds pursuant to Ch. 218, F.S., and s. 200.132, F.S., in the event the Executive Office of the Governor revises the population estimate previously certified under s. 186.901, F.S.?
2. If so, is the adjustment applicable only to the remainder of the fiscal year or may it be applied retroactively and corrected by adjusting distributions for the remainder of the fiscal year?
3. Must the Department of Revenue adjust previous distributions which were incorrect due to clerical or computational errors?
4. If distributions for previous fiscal years are incorrect due to revised population estimates or clerical or computational errors, must the Department of Revenue make retroactive adjustments by altering future distributions?
SUMMARY:
1. In the event the population estimates are revised by the governor due to an error in the decennial census, the Department of Revenue must adjust the apportionment factors for distribution of revenue-sharing trust funds pursuant to s. 218.26, F.S., for the remainder of a fiscal year and subsequent fiscal years. There is no statutory authority to allow adjustment of the apportionment factors for distributions under s. 200.132 or s. 218.61, F.S., during the fiscal year.
2. and 4. The Department of Revenue does not have the statutory authority to retroactively apply revised apportionment factors to prior fiscal years.
3. Absent statutory provisions or rules directing the handling of overpayments or underpayments of revenue-sharing funds, it would appear advisable to seek legislative clarification in this matter or to address the issue by rule.
Pursuant to s. 186.901(1), F.S.:
 The Executive Office of the Governor, either through its own resources or by contract, shall produce population estimates of local governmental units as of April 1 of each year, utilizing accepted statistical practices. The population of local governments, as determined by the Executive Office of the Governor, shall apply to any revenue-sharing formula with local governments under the provisions of ss. 218.20-218.26, part II of chapter 218. For municipal annexations or consolidations occurring during the period April 1 through February 28, the Executive Office of the Governor shall determine the population count of the annexed areas as of April 1 and include such in its certification to the Department of Revenue for the annual revenue-sharing calculation.
He stated that on June 18, 1992, the Governor's Office revised its population estimates for April 1990 in order to correct errors made by the United States Bureau of the Census. The Department of Revenue (DOR) had used the original population estimates to calculate revenue-sharing distributions from trust funds pursuant to ss. 218.215, 218.61 and 200.132, F.S., for the 1991-1992 fiscal year. Section 218.215, F.S., creates the Revenue Sharing Trust Fund for Counties and the Revenue Sharing Trust Fund for Municipalities; s. 218.61, F.S., authorizes the distribution of the Local Government Half-cent Sales Tax Clearing Trust Fund to eligible units of local government; and s. 200.132, F.S., authorizes distributions from the Municipal Financial Assistance Trust Fund to eligible municipalities and counties.
Section 11.031(1), F.S., states that all acts of the Florida Legislature based upon population are to be based upon the last federal decennial statewide census. The last federal decennial statewide census, however, is not effective for the purpose of affecting acts of the Legislature which apply only to counties of the state within a stated population bracket until July 1 of the year following the taking of such census.[1] Section 8(b), Art. X, State Const., states that "[e]ach decennial census, for the purpose of classifications based upon population, shall become effective on the thirtieth day after the final adjournment of the regular session of the legislature convened next after certification of the census."[2] The 1991 Legislative Session ended on May 2, 1991, making the 1990 decennial census effective June 1, 1991, for purposes of classifications based upon population.
Thus, while the census generally becomes effective for purposes of classifications based upon population on the thirtieth day after the regular session of the Legislature, for purposes of legislation affecting only counties within certain population brackets, the population figures do not apply until July 1 of the year following the taking of the census. This distinction has little effect on the revenue-sharing statutes at hand, since such statutes affect the fiscal years of counties and municipalities which begin October 1 of each year. The population estimates generated from the 1990 federal census, therefore, were used for the 1991-1992 fiscal year, beginning October 1, 1991, after the effective date of the decennial census under both s. 8(b), Art. X, State Const., and s. 11.031(1), F.S. The revised population estimates by the Governor were made on June 18, 1992, prior to the beginning of the 1992-1993 fiscal year.
AS TO QUESTION 1:
Part II, Ch. 218, F.S. (ss. 218.20-218.26), the Revenue Sharing Act of 1972, creates the Revenue Sharing Trust Fund for Counties and the Revenue Sharing Trust Fund for Municipalities. These trust funds are apportioned among eligible units of local government by DOR based upon specified factors related to each unit's population.[3] For purposes of the act, "[p]opulation" means "the latest official state estimate of population certified pursuant to s. 186.901 [by the Executive Office of the Governor] . . . ."[4]
Section 218.26, F.S., authorizes DOR to administer the funds and, in pertinent part, provides:
(3)(a) The department shall compute the apportionment factors once each fiscal year for use during the fiscal year. The computation shall be made prior to July 25 of each fiscal year and shall be based upon information submitted and certified to the department prior to June 1 of each year. (b) The apportionment factors shall,except in the case of error, remain in effect for the fiscal year. (e.s.)
The Legislature has directed DOR to compute the apportionment factors once each fiscal year, based upon the information certified to the department prior to June 1 of each year. The information which was provided on June 16, therefore, could not be used in computing the factors, nor could it be used to adjust the factors, unless the new population figures provided by the governor represent the correction of an "error" as contemplated in s. 218.26(3)(b), F.S.
Nothing in Part II, Ch. 218, F.S., or in its legislative history[5]
defines what constitutes an "error" for purposes of altering the apportionment factors for a fiscal year. Absent a statutory definition, the plain and ordinary meaning of the term "error" must be used, i.e., "an act involving an unintentional deviation from truth or accuracy: a mistake in perception, reasoning, recollection, or expression."[6]
Given that the corrected population estimates provided by the Governor are the result of what you term as an error by the United States Bureau of the Census in calculating the 1990 decennial census, it would appear that DOR must adjust the apportionment factors for distribution of revenue-sharing trust funds pursuant to s. 218.26, F.S., for the remainder of the fiscal year and subsequent fiscal years.[7]
Section 218.61, F.S., creates the Local Government Half-cent Sales Tax Clearing Trust Fund which DOR distributes monthly to participating units of local government.[8] The population of each participating county and municipality is used in determining the proportion of the trust fund which will be distributed by DOR.[9] For purposes of distributing this fund, the "[p]opulation" is "the latest official state estimate of population certified pursuant to s. 186.901 prior to the beginning of the local government fiscal year."[10]
Section 200.132, F.S., directs DOR to administer distributions from the Municipal Financial Assistance Trust Fund to municipalities which have qualified under s. 218.23(1)(c), F.S.[11]
The funds are distributed based upon the proportion of the municipality's population to the total population of the other municipalities in the county qualified to receive distributions. For purposes of distributing this fund, "population" is "the latest official state estimate of population certified pursuant to s. 186.901."[12]
Neither s. 218.61, F.S., nor s. 200.132, F.S., has a provision analogous to s. 218.26(3)(b), F.S., which allows for the adjustment of apportionment factors during the fiscal year in the event of an error. Absent such statutory authorization, DOR may not alter or adjust apportionment factors for distributions under ss. 218.61 and 200.132, F.S., during the fiscal year.[13]
AS TO QUESTIONS 2 AND 4:
Section 218.26(2), F.S., states that DOR "shall, for all taxes collected and received into the revenue sharing trust funds, establish a schedule of equal monthly distribution for any computation period." As noted above, the apportionment factors for the distribution of revenue sharing funds are computed once each fiscal year and remain in effect for the fiscal year, unless there has been an error. As noted above, absent statutory direction as to the nature of the error which allows an alteration of the apportionment factor, the term is given its ordinary meaning as it is used in the particular statutory context.[14] In that respect, the error would relate to a miscalculation or misrepresentation of the apportionment factors for the fiscal year.
In the event the apportionment factors must be amended due to an error, there is no general or specific statutory authorization for DOR to retroactively apply the new factors such that distributions for the remainder of the fiscal year are altered to correct previous distributions. Moreover, I have not found, nor have you directed my attention to, any statutory authority for DOR to retroactively correct apportionment factors or distributions for previous fiscal years or the portion of the fiscal year prior to the amendment of the apportionment factors due to the discovery of an error. Absent such statutory authority, DOR may exercise only those powers granted, that is, to amend the factors to correct the error and to make distributions according to the amended apportionment factors.
AS TO QUESTION 3:
This question involves incorrect distributions of revenue-sharing funds which are not due to an error in the apportionment factor, but rather are the result of a clerical or computational error. Since the question is not confined to a specific situation, my comments will be limited to a general discussion.
While there is no statutory language directing DOR to adjust previous distributions which were incorrect due to clerical or computational errors unrelated to the apportionment factors, DOR is obligated to distribute the trust funds pursuant to the apportionment factors which it has computed. Section 218.26(1), F.S., empowers DOR to promulgate rules and to issue special instructions to local governments as required to carry out the provisions of the Revenue Sharing Act. I have not found, nor has it been brought to my attention, any DOR rules or special instructions which address the correction of clerical or computational errors.
It is generally held that taxes which are erroneously distributed and paid to one not entitled thereto may be recovered by the one making the payment.[15] This would appear applicable to revenue-sharing distributions, in that a clerical error which results in an overpayment or underpayment to a municipality or county would not legally alter the amount of revenue which is due under the apportionment factors computed by DOR. Nor does it appear that such an error would relieve DOR of its responsibility to distribute the appropriate amounts or revenue-sharing funds.
Absent statutory provisions or rules dealing with overpayments or underpayments of revenue-sharing funds, it would appear advisable to seek legislative clarification in this matter or to address the issue by rule.
[1] Section 11.031(3), F.S.
[2] 13 U.S.C. § 141, states that the federal census is taken as of April 1 of the decennial year, with tabulation to be completed within nine months and reported to the President of the United States, i.e., January 1 of the following year.
[3] See, ss. 218.23 and 218.245, F.S.
[4] Section 218.21(8), F.S., also provides that "if there is no independent annual certification of population for any urban service district . . . the population of such district shall be determined by applying the latest available percentage distribution to the population of the area affected."
[5] See, Senate Ways and Means Committee, Fiscal Report House Bill 3504, May 29, 1974, and Senate Ways and Means Committee Meeting, May 29, 1974, Tapes 1 and 2.
[6] Webster's Third New International Dictionary Error
772 (unabridged ed. 1981). See also, Black's Law Dictionary 487 (Fifth ed.), defining "error" to be "[a] mistaken judgment or incorrect belief as to the existence or effect of matters of fact, or a false or mistaken conception or application of the law."
[7] Cf., Palm Beach County v. Green, 179 So.2d 356,362 (Fla. 1965) (allocation and distribution of second gas tax monies must be allocated and distributed on the basis of changes in population and area of the counties).
[8] Section 218.63, F.S., sets forth the eligibility requirements for receiving half-cent sales tax proceeds.
[9] See, s. 218.62, F.S.
[10] Section 218.60(1)(a), F.S. See also, s. 129.04, F.S., setting the fiscal year of each county of the state to commence on October 1, and end on September 30 of each year; and s. 166.241, F.S., requiring municipalities to provide for their fiscal year to begin on October 1 of each year and end on September 30 of the following year.
[11] Section 218.23(1)(c), F.S., sets forth the requirements for a unit of local government to be eligible for participation in revenue sharing.
[12] Section 200.132(1), F.S.
[13] See, Schiffman v. Department of Professional Regulation, Board of Pharmacy, 581 So.2d 1375 (1 D.C.A. Fla., 1991) (administrative agency has only authority that legislature has conferred by statute).
[14] See, Hancock Advertising, Inc. v. Department of Transportation, 549 So.2d 1086, 1088 (3 D.C.A. Fla., 1989) (a legislative word must be given its ordinary and commonly accepted meaning as it is used in the particular statutory context).
[15] See, 85 C.J.S. Taxation s. 1066, p. 662.