626 So.2d 994 (1993)
PRUDENTIAL PROPERTY & CASUALTY INSURANCE CO. OF INDIANA, Petitioner,
v.
DEPARTMENT OF INSURANCE, Respondent.
No. 93-2893.
District Court of Appeal of Florida, First District.
October 25, 1993.
*995 Mitchell B. Haigler and Daniel C. Brown of Katz, Kutter, Haigler, Alderman, Davis, Marks & Bryant, P.A., Tallahassee, for petitioner.
Dan Sumner and Dennis Silverman, Div. of Legal Services, Tallahassee, for respondent.
ZEHMER, Chief Judge.
This proceeding arises out of the casualty insurance moratorium mandated by the legislature in chapter 93-401, Laws of Florida. Prudential Property and Casualty Insurance Company of Indiana (PRUPAC) petitions this court for review of the Florida Department of Insurance's non-final agency action denying its request for exemption from the moratorium. We conclude that the actions of the respondent department failed to fully conform to the provisions of that section and, therefore, we grant in part the relief sought by petitioner.

I.
PRUPAC asserts that as a result of Hurricane Andrew in 1992 it experienced claims from policy holders approximating $1.3 billion. PRUPAC's capital and surplus was less than half that amount, and the company was rendered insolvent. Its parent company, Prudential Insurance Company of America, voluntarily infused $900 million of capital in order to maintain PRUPAC's solvency. PRUPAC's directors determined that its exposure to future risk in south Florida was too great in light of its available capital and surplus, and they commissioned two computer simulations to determine PRUPAC's maximum loss from another hurricane making landfall in Dade or Broward County in light of the data from Hurricane Andrew. Both simulations estimated probable maximum losses from a single hurricane event at approximately $1.5 billion if PRUPAC's current risks (i.e., policies in force) in Dade and Broward counties remained essentially unchanged. As a result, in January, 1993, PRUPAC notified the department of its intent to begin nonrenewal of policies in those areas commencing in February, 1993.
On May 19, 1993, the department adopted emergency rule ER-93-18 to regulate cancellations or non-renewal of casualty policies by home insurers. This rule prohibited an insurer from issuing notices of nonrenewal of personal lines of casualty insurance unless the insurer first demonstrated to the department that nonrenewals were necessary to avoid an unreasonable risk of insolvency. The matter also was presented to the legislature, and chapter 93-401, Laws of Florida, was enacted during the 1993 regular session and became law on June 8, 1993.[1] This *996 legislation provides for a moratorium effective May 19, 1993, under which no insurer shall cancel or nonrenew personal lines of property insurance in this state on the basis of risk of hurricane claims. An exception is created if the insurer can affirmatively demonstrate to the department that the proposed cancellations or nonrenewals are necessary to avoid an unreasonable risk of insolvency. Certain factors enumerated in the law are to be considered by the department in determining the risk. The legislation provides further that "in no event shall any insurer be required to risk more than its total surplus to any objectively defined probable maximum loss resulting from one Florida hurricane loss event." The department is directed to respond to an application for exemption under this subsection by issuing a final decision within 90 days after receipt of the application for exemption. Section 1(6) provides that the statute will stand repealed effective November 14, 1993.
On May 20, 1993, PRUPAC filed an application for exemption from the moratorium. A public hearing on this application was held by the department on June 3 and petitioner contends that it presented sworn evidence that PRUPAC was being required to risk more than its total capital and surplus to any objectively defined probable maximum loss resulting from one Florida hurricane event. It is also shown that PRUPAC brought an action in United States District Court raising federal constitutional challenges to the moratorium and seeking injunctive relief. PRUPAC contends that the department in that litigation has admitted the factual background described above.
By letter of August 10, 1993, the department denied PRUPAC's request for an exemption.[2] It found that the plan for nonrenewal *997 and cancellation of policies presented by PRUPAC would reduce the probable maximum loss from $1.5 billion to approximately $400 million. As PRUPAC's capital and surplus shown on its financial statements totaled approximately $700 million, and it has reinsurance of approximately $300 million, the department concluded that the proposed cancellations were not necessary to avoid an unreasonable risk of insolvency. PRUPAC was given the opportunity to resubmit a proposal in which the planned cancellations and nonrenewals are designed to reduce the exposure to that amount which, after calculating reinsurance, would reduce probable maximum loss to an amount not in excess of total surplus. The insurer was notified of its right to petition for a formal administrative proceeding if it disagreed with this decision. PRUPAC did request such a hearing and the matter was referred to the Division of Administrative Hearings (DOAH). A hearing was set for the week of October 25 and the department has refused to agree to enter a final order sooner than required by Chapter 120. PRUPAC argues that any final order so entered will offer it no timely relief as its right to proceed with nonrenewals during the moratorium will be lost.

II.
PRUPAC applies to this court for alternative remedies. First, it seeks review of non-final administrative action in accordance with Florida Rules of Appellate Procedure 9.030(b)(1)(C) and 9.100, and section 120.68(1), Florida Statutes (1991). It argues that it is entitled to the exemption as a matter of law, and that the department is without discretion to deny its application because chapter 93-401 authorizes an exemption from the moratorium for an insurer whose risk of probable maximum loss from a single hurricane event exceeds its surplus. This latter fact is the only fact that must be demonstrated to obtain a waiver and, PRUPAC asserts, it has proven this fact beyond any dispute. PRUPAC argues that the department is not free to consider any other factors enumerated in the statute because once this controlling fact has been established the granting of a waiver or exemption is a ministerial act.
PRUPAC also complains of the department's failure to render a final decision within 90 days, urging that the department delayed notice of intended agency action until PRUPAC was deprived of all meaningful relief. PRUPAC argues that the department is wrongfully enforcing chapter 93-401 against PRUPAC because it is compelled to choose between renewal of all homeowners policies or exposing itself to fines and penalties for nonrenewals. PRUPAC also notes that, by law, 45 days notice must be given when the insurer intends to nonrenew, a fact that further delays any effective reduction of its risks.
Alternatively, PRUPAC petitions for a writ of mandamus to compel the agency to comply with the 90-day directive set forth in the statute, asserting that this is an available remedy under Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla. 1982). *998 PRUPAC argues that chapter 93-403 is more specific and more recent than the time provisions of chapter 120, and that the more recent enactment controls; to otherwise interpret the statute would render it a nullity, a result which must be avoided.
The department has responded in opposition to the petition with the following contentions. It expresses little disagreement with the facts but points out that PRUPAC's request for an injunction from the federal court was rejected on grounds that the alleged risk of insolvency was too remote. It is the department's position that it timely rendered a final decision by its letter of August 10, 1993. At the request of PRUPAC, it then referred the matter to DOAH, where discovery was expedited and a hearing date was set for October 25. The department argues that in light of the complex nature of this case, it could not commit to an early date for issuance of a final order. The department argues that PRUPAC's application asked for a greater level of exemption than it could justify because the application would have reduced its exposure by an amount exceeding its claims-paying capacity of $1 billion by at least $600 million even if the legitimacy of PRUPAC's alleged maximum loss model could be established (a fact that the department does not concede on this appeal). The department contends that it had no responsibility to modify the application so as to fashion an acceptable result for PRUPAC because it lacked the requisite authority to do so, analogizing this situation to rate filings which must either be accepted or rejected.
The department also argues that its August 10 letter was a "final decision" and timely in accordance with chapter 93-401, section 1(4). PRUPAC, according to the department, is attempting to substitute the term "final order" in chapter 120 for the express statutory language "final decision" contained in Chapter 93-401. Since the legislature is familiar with the term "final order" as used in the Administrative Procedure Act, it would have utilized that term if it had meant to place that procedural burden upon the department. Hence, the construction of the statute put forth by petitioner is contrary to the statutory language and, moreover, would lead to a preposterous result. Given the time frames provided in chapter 120 and the need for discovery, there is literally no reasonable way that a final order could be issued within the 90 days.
As to mandamus, the department asserts the following contentions. Petitioner must show that it has a clear legal right to the performance of an action, that the department has an indisputable legal duty to perform that action, and that there is no adequate legal remedy available to PRUPAC; but PRUPAC has failed to establish any of these three requirements. PRUPAC is only entitled to an exemption if its application affirmatively demonstrates that it faces an unreasonable risk of insolvency or that it is risking more in exposure than its capital and surplus. PRUPAC's application showed that it is not risking more than its total surplus, nor did it satisfy the unreasonable risk of insolvency test. The federal court found the risk of insolvency to be remote. PRUPAC has failed to establish that the department had an indisputable obligation to issue an exemption to it. The department's evaluation of the application involved resolution of factual issues of a statistical and financial nature. The evaluation cannot be termed ministerial. Instead, the department had discretion to approve or deny the application based on its review of the facts contained therein. The department asserts that mandamus cannot be used to compel a public agency to act in a particular matter when it is within the agency's discretion, citing Hall v. Key, 476 So.2d 787 (Fla. 1st DCA 1985). Since the agency complied with the statutory time frame there was no need to grant the application on a procedural basis. PRUPAC has available and is seeking other remedies.
Petitioner has replied to the department's response as follows. The simple facts are that PRUPAC's capital and surplus is no more than $700 million, it experienced losses from Hurricane Andrew of approximately $1.3 billion, and projections indicate that another hurricane could result in losses equal to that amount or more. Nonrenewal is necessary in respect to a few policy holders so that the majority of the policy holders are not placed in the position of loss of coverage *999 because of the insolvency of their insurer. As for the remoteness of the risk, this is not a factor identified by the legislature in chapter 93-401 to be considered by the department. PRUPAC has properly limited its claims in federal court to those arising under the federal constitution and the issues presented here are not presented there. PRUPAC should not be required to resubmit a new application when it is entitled to the exemption under the express terms of the statute. Petitioner argues that the department's interpretation of the statute regarding the time limit will lead to an absurd result. Since the statute by its express terms was only effective for six months, if the agency need only announce its intended action within 90 days, there is no way a formal chapter 120 proceeding leading to a final order could be concluded before the statute, by its own terms, expires.
Petitioner further argues that the department is wrongly inferring that, because PRUPAC's parent corporation (Prudential Insurance Company) once infused capital to avert PRUPAC's bankruptcy, this possibility should be taken into account in making a decision on the application for exemption. The parent corporation is a life insurance company and had no obligation to take this action once, much less a second time. Petitioner points to various portions of the insurance code to support its contention that the parent corporation would be under no legal obligation to make a second infusion of capital; indeed, being a life insurance company it could not commit its assets to underwrite losses of a casualty insurance company. Thus, the department's reliance on such a possibility is incorrect.

III.
There are two principal issues presented to us in this proceeding. The first is what form of remedy, if any, is available to PRUPAC to obtain appellate review of the department's "final decision" denying its application for waiver prior to the section 120.57 hearing. The second issue is whether the department, in rendering that "final decision" denying PRUPAC's application for exemption, has failed to comply with the requirements of chapter 93-401.

A.
We conclude that, by virtue of section 120.68(1), Florida Statutes, rule 9.030(b)(1)(C), Florida Rule of Appellate Procedure, and Article V, section 4(b)(2), of the Florida Constitution, we have jurisdiction to review the department's decision in its August 10 letter denying the requested exemption. It appears to us that PRUPAC has no adequate remedy to address the issues hereinafter discussed if it is compelled to await entry of a final order after the scheduled section 120.57 hearing has been completed and a recommended order has been submitted to and acted on by the department.
We reject the department's contention that PRUPAC's petition was not timely filed in this court within 30 days of August 10 because there has not been an adequate showing that the department's August 10 letter was "rendered" on that date by filing it with the agency's designated clerk. Rule 9.020(g), Fla.R.App.P.; rule 4-121.009, Fla. Admin. Code.
We deny relief by mandamus without further discussion in view of our decision that petitioner has an adequate remedy pursuant to section 120.68(1).

B.
In considering the correctness of the department's decision on PRUPAC's application for waiver, we first look to the language of section 1, chapter 93-401 (see note 1, supra). Some of the language and terms used in that section are not entirely clear and free from ambiguity. For example, the parties to this cause disagree as to the meaning of the phrase "objectively defined probable maximum loss." The department contends that it means only the probability that a hurricane event leading to "probable maximum loss" will occur in the near future; petitioner argues that the phrase means it must establish that such a hurricane event and loss can be reasonably anticipated to occur with a degree of probability at some unspecified time in the future. From a statistical standpoint, we acknowledge that no *1000 one can predict exactly when such a hurricane event will occur; it can only be shown that as a matter of reasonable probability such a storm event will occur during a stated period at an unspecified time in the future.
We have previously discussed the disputed interpretation of the term "final decision." We are constrained to agree with PRUPAC that the agency's reading of this portion of the statute is illogical. The statute is silent as to whether any disputes that arise in the agency's treatment of an application are to be handled in a routine manner under the provisions of sections 120.57 and 120.59, Florida Statutes. It is also silent as to how the 90 day time limit is to be met when an evidentiary hearing is undertaken pursuant to section 120.57. Moreover, the legislature did not provide an express remedy for the department's failure to render a "final decision" within 90 days, leaving meaningful enforcement of that provision by PRUPAC unsettled. The department should have fashioned emergency procedures to handle requests for exemption under this temporary law.
The parties also disagree as to the meaning of the phrase "to risk more than its total surplus." The department construes this language to mean that it may consider the applicant's available reinsurance and, if necessary, the assets of a parent corporation in determining total available surplus; PRUPAC argues that the department must exclude available reinsurance because of the uncertainty that such insurance may be available in the event of a specific loss, and that the department may only consider its $700 million capital and surplus shown on its balance sheet in making this assessment. We do not decide this dispute at this time, however.
During oral argument mention was made of the potential extension of the moratorium established by this legislation at an upcoming special session of the legislature. If any consideration is given to extending the provisions of this legislation, we strongly urge the legislature to define the critical terms and draft the statute so as to obviate these and other ambiguities inherent in the current law.

C.
With respect to the merits of the issue before us, we conclude that the nature of this emergency legislation, especially in light of the 90 day limit for a "final decision," necessarily requires non-routine handling of claims for exemption under section 1(4). Otherwise, if such applications are to be handled as any other routine applications, insurers seeking exemption from this seemingly confiscatory legislation to avoid future risk of insolvency are essentially left without an effective remedy to obtain any relief during the apparently limited life of this moratorium. The department should have used its emergency rule making power to adopt procedures for the expeditious handling of applications for exemptions if it believed the statute included the right to a section 120.57 hearing, but it did not do so. The department has offered no meaningful explanation for why it took nearly 90 days to reach the non-final decision reported to PRUPAC in the August 10 letter. However, the statute contains no provisions for enforcement of that section, so any question of the department's noncompliance with that provision is now essentially moot.
The department is given discretion by section 1, chapter 93-401, to review applications for exemption and, based on their review of the matters submitted, to grant or deny such applications. In exercising this discretion, however, the department must comply with the intent of that legislation. It also is required to state the reasons for its decision on the application in its written action. See Mann v. Department of Professional Regulation, Board of Dentistry, 585 So.2d 1059 (Fla. 1st DCA 1991); Schiffman v. Department of Professional Regulation, Board of Pharmacy, 581 So.2d 1375 (Fla. 1st DCA 1991); Alachua County v. Florida Department of Highway Safety and Motor Vehicles, 417 So.2d 1073 (Fla. 1st DCA 1982); General Development Corporation v. Division of State Planning, Department of Administration, 353 So.2d 1199 (Fla. 1st DCA 1977). In view of the facts accepted by the department in its August 10 letter (see note 2 supra), we believe it is readily apparent that *1001 PRUPAC's showing before the department made out a prima facie case for exemption in part from the moratorium. PRUPAC asserted that it was subject to a risk of $1.5 billion in claims in the event of a severe hurricane event in north Dade and south Broward counties. It had just experienced claims of $1.3 billion as a result of hurricane Andrew in Dade county alone. Thus, accepting the departments finding that PRUPAC had $700 million capital and surplus on its balance sheet, and also had approximately $300 million in available reinsurance (for a total of $1 billion), the probable maximum loss of $1.5 billion referred to in the letter remains some $500 million in excess of the total available capital, surplus, and reinsurance. Because these figures were not disputed in the department's letter decision, it is readily apparent that PRUPAC was not entitled to all of the relief it sought, but nonetheless it was entitled to some relief at least.
We note that section 1(4), chapter 93-401, contains language which recognizes that an insurer's claim for exemption from the moratorium can be granted in whole or in part ("In the event that the department determines that the moratorium does not apply in whole or in part ..."). This language strongly indicates legislative anticipation that some applications for exemption might not be granted "in whole" but only "in part," undoubtedly for the reasons similar to those in this case where the request, in the view of the department, apparently exceeded the total amount of nonrenewals necessary to avoid "an unreasonable risk of insolvency." We conclude that, to the extent the figure used in the department's letter of August 10 for probable maximum loss (i.e., $1.5 billion) exceeded the total capital, surplus, and reinsurance calculated by the department, PRUPAC was entitled to a partial exemption from the moratorium. But the department did not so apply the law; rather, it denied the application "in whole" and required PRUPAC to submit a whole new application effectively compelling it to reapply and commence the process all over again. In so doing, the department failed to comply with the legislative intent reflected in section 1 of chapter 93-401.
The department argues that it does not agree to the accuracy of PRUPAC's probable maximum loss of $1.5 billion, and that this is a question of disputed fact that must be determined at the section 120.57 evidentiary hearing. We reject this contention because the department's August 10 letter setting forth its "final decision" did not specifically dispute the accuracy of the $1.5 billion figure presented by PRUPAC through sworn evidence at the June 3 hearing. See Couch Construction Company, Inc. v. Department of Transportation, 361 So.2d 172 (Fla. 1st DCA 1978). Although the fact that PRUPAC sustained $1.3 billion in claims in Dade County alone as a result of hurricane Andrew lends considerable credence to PRUPAC's claimed exposure of $1.5 billion in north Dade and south Broward, we conclude that the department was obligated to dispute this figure in its August 10 decision if it had evidence that the figure was inaccurate. Having failed to do so, the department cannot change its position on this appeal in an attempt to sustain its decision on a completely different ground.
We do not by this opinion decide, as a factual matter, whether PRUPAC's claim of a $1.5 billion probable maximum loss is accurate, as to do so is beyond the scope of appellate review. Nor do we now undertake to decide whether the department is correct in its construction of the legislation to include reinsurance in calculating PRUPAC's risk exposure under the terms of this statute. Rather, we leave this determination, and determination of other issues argued on this appeal, open for consideration at the evidentiary hearing to be conducted by a DOAH hearing officer to the extent that evidentiary facts may be relevant to give meaning to the ambiguous statutory language.[3]
In summary, we hold that the department did not comply with the requirements of section 1, chapter 93-401, when it failed to grant PRUPAC an exemption "in part" *1002 based on PRUPAC's showing and the reasons for denial stated in the department's August 10 letter. Accordingly, we reverse the department's decision and remand this cause with directions that the department reconsider PRUPAC's application and consider granting it an exemption from the moratorium "in part" on terms that are consistent with this opinion. Whether PRUPAC is entitled to the exemption sought in its application "in whole" can be determined after receipt of the hearing officer's recommended order, which we anticipate will be entered as soon as possible.[4]
REVERSED AND REMANDED.
KAHN, J., and SHIVERS, Senior Judge, concur.
NOTES
[1] Section 1, chapter 93-401, entitled "Moratorium on cancellation and nonrenewal of residential property coverages," reads:

(1) FINDINGS AND PURPOSE.  The Legislature finds that property insurance, as a condition of doing business in this state, have a responsibility to contribute to an orderly market for property insurance and that there is a compelling state interest in maintaining an orderly market for property insurance. The Legislature further finds that Hurricane Andrew, which caused over $16 billion of insured losses in South Florida, has reinforced the need of consumers to have reliable homeowner's insurance coverage; however, the enormous monetary impact to insurers of Hurricane Andrew claims has prompted insurers to propose substantial cancellation or nonrenewal of their homeowner's policyholders. The Legislature further finds that the massive cancellations and nonrenewals announced, proposed, or contemplated by certain insurers constitute a significant danger to the public health, safety, and welfare, especially in the context of a new hurricane season, and destabilize the insurance market. In furtherance of the overwhelming public necessity for an orderly market for property insurance, it is the intent of the Legislature to impose, for a limited time, a moratorium on cancellation or nonrenewal of personal lines residential property insurance policies.
(2) APPLICABILITY.  This section applies to personal lines residential property insurance in this state. The term "personal lines residential property insurance" includes the following coverages: homeowner's: condominium unit owner's; mobile homeowner's, including mobile home coverage written on auto physical damage type policies; and dwelling fire including rental dwelling coverages. This section does not apply to commercial coverages and does not apply to commercial or private passenger auto coverages.
(3) MORATORIUM IMPOSED.  Effective May 19, 1993, no insurer authorized to transact insurance in this state shall, until the expiration of this section pursuant to subsection (6), cancel or nonrenew any personal lines property insurance policy in this state, or issue any notice of cancellation or nonrenewal, on the basis of risk or hurricane claims. All cancellations or nonrenewals must be substantiated by underwriting rules filed with and accepted for use by the Department of Insurance, unless inconsistent with the provisions of this section. The Department of Insurance is hereby granted all necessary power to carry out the provisions of this section.
(4) EXCEPTION.  This section shall not apply if the insurer can affirmatively demonstrate to the department that the proposed cancellation or nonrenewal is necessary for the insurer to avoid an unreasonable risk of insolvency. In reaching this determination the department shall consider the insurer's size, its market concentration, its general financial condition, the degree to which personal lines residential property insurance comprises its insurance business in this state, and the way in which these factors impact on the risk to the insurer's solvency in relation to its probable maximum loss in the event of a hurricane. In no event shall any insurer be required to risk more than its total surplus to any objectively defined probable maximum loss resulting from one Florida hurricane loss event. In the event that the department determines that the moratorium does not apply in whole or in part and the department further determines that the exception affects more than I percent of any class of business within the personal lines residential property insurance market in this state, the department shall in the order set forth a nonrenewal, cancellation, or withdrawal schedule that avoids unnecessary market disruption or exposure to the insureds statewide or in any locale. The department must respond to an application for a waiver under this subsection with a final decision within 90 days after it receives the application for a waiver.
(5) PENALTY.  Any violation of this section constitutes a violation of the Insurance Code. Each cancellation or nonrenewal of a policy in violation of this section shall be considered a separate action.
(6) REPEAL.  This section is repealed on November 14, 1993.
[2] That letter recites in part:

We have reviewed Prudential Property and Casualty Insurance Company's (PRUPAC's) request for an exemption from the moratorium imposed by Ch. 93-401, Laws of Florida, for your plan to reduce your policyholders in Dade County from 23,606 to 10,913 and in Broward County from 19,363 to 7,324.
The exemption is requested pursuant to Section 1, paragraph 4 of HB 89-B which provides that the moratorium shall not apply if the proposed cancellation or nonrenewal is necessary for the insurer to avoid an unreasonable risk of insolvency.
The purpose of the plan you have filed with the department is to reduce Prupac's probable maximum loss from a severe hurricane with a landfall in the North Dade/South Broward area from approximately $1.5 billion dollars (sic) to approximately $400 million dollars (sic). Prupac's capital and surplus at 12-31-92 was $671 million dollars (sic); it increased to almost $700 million dollars (sic) at 6-30-93. Furthermore, Prupac has reinsurance of approximately $300 million dollars (sic). Based on the foregoing it is concluded that the proposed cancellations and nonrenewals are not necessary to avoid an unreasonable risk of insolvency and the request for exemption is therefore denied.
If you wish, you may resubmit a proposal in which the planned cancellations and nonrenewals are designed to reduce your exposure to that amount which, after calculating the effects of reinsurance, would reduce Prupac's probable maximum loss to an amount not in excess of its total surplus. In making any such subsequent proposal the following shall be considered:
a) A plan for cancellation and nonrenewal that minimizes the market disruption and difficulty for Prupac's insureds;
b) Availability of capital from the Prudential Insurance Company of America (the Prudential). If your proposal limits Prupac's ability to pay claims to its own resources, with no contribution form the Prudential, then Prupac shall provide verification that all sales, solicitation and advertising for Prupac in this state shall distinguish, in clear and unambiguous terms, between Prupac and the Prudential, and that none of the foregoing contains any suggestion that the Prudential's capital backs up Prupac's policies.
The letter concludes with instructions for obtaining a evidentiary hearing pursuant to section 120.57.
[3] For example, we do not consider whether the department can compel Prudential Insurance Company, a life insurance company, to make its assets available to secure payments to PRUPAC's policyholders.
[4] We take judicial notice of the files in this court in Prudential Property and Casualty Insurance Company of Indiana v. State of Florida Department of Insurance, case number 93-3311, in which we entered an order quashing the hearing officer's order continuing the October 25 section 120.57 hearing. For purposes of our decision in this case, we note that had that hearing been continued past the end of the moratorium on November 14 as recited in the hearing officer's order, serious questions concerning the invalidity of the statute for lack of any meaningful remedy to avoid confiscation of PRUPAC's assets would be presented.