581 So.2d 621 (1991)
Dr. C.J. COURTENAY, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 90-767.
District Court of Appeal of Florida, Fifth District.
June 6, 1991.
Rehearing Denied July 3, 1991.
*622 Terrence William Ackert, Winter Park, for appellant.
James W. Sawyer, District Legal Counsel, Orlando, for appellee.
PETERSON, Judge.
The Florida Department of Health and Rehabilitative Services (HRS) solicited for bids in early March 1989 for the lease of Orlando office space. Three bids were received, including one from C.J. Courtenay. The building he offered for lease was at that time occupied under a lease by HRS. When the bid was awarded to Harpauls Ohri on June 26, 1989, Courtenay filed a protest. A 20-hour hearing was ultimately held before the Division of Administrative Hearings on August 25 and 26, 1989.
The hearing officer (HO) filed a recommended order which concluded that the HRS bid evaluation "committee did not properly utilize the weighted bid criteria and, in addition, included improper bid considerations in their evaluation of the three facilities." The HO next determined that, since Courtenay had established that the award of the lease to Ohri was not an honest exercise in discretion by HRS and that it had resulted from illegality, fraud, oppression, or misconduct on the part of HRS, all bids should be rejected and a new invitation to bid should be extended.
HRS fully accepted these findings of fact and conclusions of law and itself labeled the bid process "fatally defective." However, HRS departed from the hearing officer's recommended order. The final order of March 7, 1990, provides: "Based upon the foregoing, it is adjudged that all bids be rejected. If there is still a need for the *623 office space, a new invitation for bids shall be issued." The implication from the order is that perhaps HRS no longer needed the space, yet HRS has continued to occupy Courtenay's building throughout the protest.
Courtenay appeals the final order and argues that HRS should be compelled to award the bid to him because of the improper bid review. He argues that to do otherwise would "create the unholy spectacle" of a protestor who wins a protest but is without remedy or relief. He also argues that HRS should not have amended the final order to invite new bids "[i]f there is still a need for office space" and that he is entitled to attorney's fees.
We agree that fashioning a remedy is fraught with problems. One solution is to require the bidding process to begin anew, which would place the protestor on an equal footing with all those who submit a current bid. Another solution is to require that a new HRS evaluation committee review the original bids to select one of the original bidders. The latter solution is impractical, however, since the bids are now two years out of date, the financial data upon which the bids were submitted is stale, and there is no assurance that the other bidders can perform under the terms of their original bids.
We agree with the finding of the HO that "[i]t is not the hearing officer's function to reweigh the award factors and award the bid to the protestor. This is the prerogative of the department." Our review of the record shows substantial competent evidence to support the conclusion of the HO that Courtenay's bid was not established as the lowest and best. Some but not all of the evaluation criteria favored Courtenay's building.
While we recognize the unfairness and the frustration felt by Courtenay who has borne the expense of the administrative hearing and appeal process, we see no alternative to the remedy fashioned by the HO, that is, simply to require the bid process to begin anew, including new specifications for bidders. We would add the caveat that the specifications must not be designed to eliminate or handicap Courtenay's expected bid. The unfairness caused by HRS in the initial bid process must not be repeated. The bidders are entitled to have such bids considered fairly and impartially. The citizens of this state are also entitled to have bids fairly considered by administrative officers entrusted to apply tax dollars wisely. Unfortunately, bureaucratic wrongdoing in the initial bid process has caused these tax dollars to be diverted to expenses not associated with the social benefits that are the very reason for the existence of HRS.
The addition by HRS to the HO's recommended order that the invitations to bid be re-issued only if HRS still needs the space must be rejected. The HO found that HRS "specifically requested and received approval from the Department of General Services for additional office space." HRS has continued to occupy Courtenay's building for the duration of the protest. HRS awarded to Ohri the lease of seven years commencing December 1, 1989, and, by doing so, indicated that it planned to proceed with the lease, subject, of course, to one of the conditions of the invitation to bid that "the State of Florida's performance and obligation to pay under this contract is contingent upon an annual appropriation by the legislature," pursuant to section 255.2502, Florida Statutes (1988 Supp.). Standards of fairness, due consideration, good faith, and accord inherent in the bid process system dictate that, in this case, HRS be required to relet bids for the space with substantially similar specifications for the remaining portion of the original lease period. See Wood Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978); 10 McQuillin, Municipal Corp. § 29.77 (1990).
A bidder should have incentive to challenge the bidding procedure in the face of bureaucratic abuses such as exist in the instant case, but this is a problem to be addressed by the legislature. The bid procedure was fashioned to discourage discriminatory governmental awards and to assure the procurement of the best value in exchange for public funds. When the procedure is not followed, those objectives are not achieved. Potential bidders either may *624 decline to participate in bidding or may be tempted to add premiums to the bids for having to deal with the bureaucracy. The best that this court can do is to award attorney's fees to the challenging bidder who must have more courage than a Mississippi riverboat gambler. The bidder must gamble on winning during the original bidding procedure, but if he loses as a result of an unfair bid procedure, he must then gamble that he will prevail in a three-stage procedure  once before the hearing officer, once before the agency, and, finally, before the appellate court. The stakes of the gamble are that he will be reimbursed the costs and attorney's fees to obtain that which he was originally guaranteed statutorily  an opportunity to obtain an award in a fair arena. Courtenay has prevailed at all levels of the procedure and is entitled to attorney's fees and costs in this example of a gross abuse of discretion by HRS.
We remand to the Division of Administrative Hearings for further proceedings and for the purpose of awarding attorney's fees and costs to Courtenay pursuant to section 120.57(1)(b)(10). Simultaneously, we remand to HRS for the purpose of beginning the bidding procedure anew for the lease of premises for the remaining period of what would have been a seven-year lease beginning December 1, 1989.
REVERSED and REMANDED.
W. SHARP and HARRIS, JJ., concur.