659 So.2d 1106 (1995)
CITY OF MIAMI BEACH, and Juan A. Garcia, Jr., et al., Appellants,
v.
DICKERMAN OVERSEAS CONTRACTING COMPANY, U.S.A., Appellee.
Nos. 94-879, 94-549.
District Court of Appeal of Florida, Third District.
May 3, 1995.
Rehearing Denied September 27, 1995.
*1107 Zack, Ponce, Tucker, Korge & Gillespie, and Keith E. Hope, Miami, for appellant, City of Miami Beach.
Spence, Payne, Masington, Needle & Leeds, and Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, and Joel D. Eaton, Miami, for appellant, Juan A. Garcia, Jr.
Fowler, White, Gillen, Boggs, Villareal & Banker, and Bonita L. Kneeland, Tampa, for appellee.
Before NESBITT, BASKIN, and GERSTEN, JJ.
NESBITT, Judge.
Juan A. Garcia, Jr. was injured in a diving accident at a site along the City of Miami Beach shoreline. Garcia brought a negligence action against the City and Dickerman Overseas Contracting Company, among others, alleging that they were negligent in failing to remove certain underwater debris at the site, and by failing to take the necessary precautions to prevent the accident. The lower court granted Dickerman's motion for summary judgment on the ground that there was no legal or contractual basis between the plaintiff Garcia and Dickerman upon which a legal duty existed or could be imposed. Garcia and the City appeal. We affirm.
In March 1988, Dickerman responded to a City of Miami Beach invitation to bid on a contract to remove underwater debris at a former pier site. In May, 1988, the City notified Dickerman that it had accepted Dickerman's bid, and presented Dickerman with the contracts for its signature. Because provisions for certain technical services in Dickerman's initial proposal had changed, Dickerman did not execute the performance contract until it and the City re-negotiated and agreed to new specifications, resulting in Dickerman signing the performance contract on June 20, 1989. On August 3, 1989, the City sent Dickerman a Notice to Proceed and to begin work on August 8, 1989. Garcia's diving accident occurred on February 1, 1989, five months before the performance contract was signed and seven months before the City notified Dickerman to begin work.
The principle issue in any negligence action is whether the injury resulted from the defendant's violation of a legal duty owed to the plaintiff. Seitz v. Surfside, Inc., 517 So.2d 49 (Fla. 3d DCA 1987), review denied, 525 So.2d 880 (Fla. 1988). Without the element of duty, there is no cause of action for negligence. Id. at 50. In the absence of any duty imposed by law, the element of duty in this particular negligence action depended on the existence of a valid contract between the City and the contractor, Dickerman, at the time of the incident. See 38 Fla.Jur.2d Negligence § 17 (1982) (in a negligence action, the contract is significant only in creating the legal duty). Here, the City itself wrote the bid agreement and performance contract. By the City's own explicit terms, the contract was not "executed" until the contractor signed. Because Dickerman *1108 did not sign, or "execute," the bid acceptance and performance agreement until June 20, 1989, well after Garcia's February 1, 1989 accident, we find no valid contract between these parties, and no duty on Dickerman's part to protect Garcia at the time the accident occurred.[1]
We acknowledge that normally in a public bidding contest, "acceptance" of a bid forms a contract between the parties, which in turn gives rise to the duty to use reasonable care in affirmatively performing that contract. See, e.g., Schloesser v. Dill, 383 So.2d 1129 (Fla. 3d DCA 1980). Notwithstanding those cases cited by the City for this proposition, they do not control where, as in this case, the City explicitly provided in its invitation to bid that there was no contract to perform entered into until the Bidder "executed" it. Here, it appears that the invitation to bid was explicitly drafted by the City to avoid the above principle.
Moreover, the relationship between Dickerman and the City did not give rise to any duty by Dickerman to the plaintiff that was imposed by law independent of contracts. See, e.g., Mullray v. Aire-Lok Co., 216 So.2d 801 (Fla. 3d DCA 1968).
For the foregoing reason, the order under review is affirmed.
GERSTEN, J., concurs.
BASKIN, Judge, dissenting.
The sole issue in this appeal from a final summary judgment in defendant's favor is whether defendant Dickerman Overseas Contracting Company, U.S.A. ["Dickerman"], was contractually bound to remove the debris from the South Pointe Pier demolition on the date of plaintiff's accident and owed any duty to plaintiff Juan A. Garcia, Jr. ["Garcia"]. We are required to determine on what date Dickerman's contract with the City of Miami Beach ["City"] became binding. I do not agree with the majority's conclusion that Dickerman's contractual obligation, and hence, its duty to Garcia arose as of the date Dickerman signed the written documents. The evidence and well-settled law demonstrate that Dickerman was contractually bound once the City accepted its bid. I would reverse the final summary judgment.
On February 24, 1988, the City published its "Invitation To Bid No. 77-87/88 Removal Of All Debris Left Over From Previous Demolition Of South Pointe Pier, MP-259." The Invitation contained all necessary specifications and descriptions of the project upon which contractors were bidding, as well as the contract to be executed and all its terms and conditions. The Invitation required the successful bidder to execute all necessary agreements within ten days after award of the contract. The documents stated that time was of the essence in completing the project.
Dickerman submitted its bid to the City on March 12, 1988. In the bid, Dickerman agreed to execute all documents within ten days of award of the contract, to commence the work within fifteen days, and to complete the work sixty days thereafter. The City awarded Dickerman the contract on April 20, 1988, and mailed Dickerman the documents to sign on May 9. Dickerman did not sign the contract. On May 23, Dickerman wrote the City to express its wish to alter the project inspection and removal procedures. On June 14, the City informed Dickerman that the May 23 letter did not relieve it of responsibility, and that, moreover, failure to sign the contract would cause Dickerman to forfeit its bid bond. The City sent the bond surety a notice of default on the bond. Dickerman and the City continued negotiations through November 16, 1988, at which time the City finally acquiesced to Dickerman's alternative inspection procedure.
On February 1, 1989, eight months after Dickerman was awarded the contract by the *1109 City, Garcia injured himself on the debris Dickerman had contracted to remove. In response to Garcia's lawsuit, Dickerman denied liability, arguing that because it did not actually sign the contract with the City until June, 1989, and did not receive the Notice To Proceed until August, it was not bound to do the project and owed Garcia no duty on the accident date.
I disagree with the majority's ratification of Dickerman's theory. Adhering to fundamental principles of contract law, I must conclude that Dickerman was contractually bound to perform the work outlined in the Invitation to Bid on the date the City awarded Dickerman the contract; Dickerman's duty to Garcia arose on that date. On the date of Garcia's injury, Dickerman owed Garcia a duty of care and summary judgment in Dickerman's favor on this issue is incorrect.
The law is well settled that a contractual relationship arises between a public entity and a successful bidder once the bidder is notified of the bid's acceptance. John G. Grubbs, Inc. v. Suncoast Excavating, Inc., 594 So.2d 346 (Fla. 5th DCA 1992); Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978).
A bid submitted pursuant to an invitation is an offer. No contractual relations arise between the person who submits such a bid and the public body on behalf of which the invitation was made until the bid is accepted. ... Acceptance of a bid results in a contract even though a formal contract has not been executed.

43 Fla.Jur.2d, Public Works & Contracts § 22 (1983) (footnotes omitted) (emphasis added).
This court has unequivocally held that a valid and enforceable contract arises between the parties once the public body notifies a contractor that its bid has been accepted. Schloesser v. Dill, 383 So.2d 1129 (Fla. 3d DCA 1980); City of Homestead v. Raney Constr., Inc., 357 So.2d 749 (Fla. 3d DCA 1978). This rule of law has been followed even in the absence of a written, executed agreement between the parties. Schloesser, 383 So.2d at 1130 (contract exists between County and successful bidder even in absence of written agreement). Accord Terra Group, Inc. v. Sandefur Management, Inc., 527 So.2d 849, 849 (Fla. 5th DCA 1988) (upon notification that bid was accepted contract existed between parties to enter into the formal written contract); Dedmond v. Escambia County, 244 So.2d 758, 760-61 (Fla. 1st DCA 1971) (cancellation of award prior to execution of contract by successful bidder is a breach of contract).
Under these well established principles of law, Dickerman was contractually bound to perform the South Pointe Pier demolition once the City notified Dickerman that its bid was accepted. The same principle of law contractually bound the City to honor its award of the contract to Dickerman once it accepted Dickerman's bid. John G. Grubbs, Inc.; Terra Group, Inc.; Schloesser; City of Homestead; Dedmond. Contrary to Dickerman's suggestion, the date on which the City issued Dickerman the Notice To Proceed is irrelevant to the resolution of this issue: Dickerman's refusal to sign the contract and attempts to renegotiate the contract terms after the award caused the fifteen-month lapse in time between the award of the contract and the issuance of the Notice.
Moreover, there is no evidence to support Dickerman's argument, and the majority's conclusion, that the City drafted the Invitation To Bid to avoid this principle. Op. at p. 1107. Dickerman's argument that the contract lacks mutuality because the Invitation to Bid states that the proposal is not binding upon the City until the written agreement is signed, is disingenuous and unpersuasive. Dickerman's argument relies on a sentence taken out of context. Paragraph 3.5, "Execution of Contract and Payment Bond" provides: "Within ten (10) days after the Contract has been awarded, the successful Bidder shall sign the necessary agreements, entering into a Contract with City, and return them to the City Engineer. No proposal will be considered binding upon the City until the execution of this Contract." When considered in light of the language that precedes it, it is clear that the second sentence of the paragraph, upon which Dickerman bases its argument, was merely an attempt to enforce the requirement that a successful bidder execute the written agreement, or, alternatively, *1110 attempting to avoid liability to a successful bidder, who, like Dickerman, refuses to execute a written agreement despite having been awarded the contract.
Nothing in the case law demonstrates that the City would be able to prevail should it attempt to rescind its award of the project to Dickerman, as the successful bidder, on the basis of the language of that sentence. To repeat the rule of law enunciated above, even in the absence of a written agreement, a public body may not rescind the award of a contract once the successful bidder has been notified of the award. Compare Terra Group, Inc. (public body may not rescind award after successful bidder is notified); Schloesser (same); Dedmond (same), with H. Gore Enter., Inc. v. City of West Palm Beach, 617 So.2d 1160 (Fla. 4th DCA 1993) (when city code provides for both "award of bid," and "award of contract," award of bid alone insufficient to create binding contract). Assuming, arguendo, that Dickerman's interpretation of the paragraph was feasible, it would merely raise an ambiguity in the contract, creating a factual issue not properly resolved by summary judgment.
Based on the foregoing analysis, I would reverse the final summary judgment in Dickerman's favor and remand the cause for further proceedings.
NOTES
[1] Two separate agreements were secured by two separate bonds, one to secure the bid acceptance and execution, and another to secure the performance of the executed contract. Until "execution" of the performance agreement, the Bidder had not yet entered into the performance contract, and the proposal was not binding on the City. Furthermore, the City negated its own responsibilities until the performance contract was first "executed," when it expressly provided in its bid proposal that "[n]o proposal will be considered binding upon the City until the execution of this Contract." (emphasis added).